EDWARD D. JOHNSON (SBN 189475)
WJohnson@mayerbrown.com
ANTHONY J WEIBELL (SBN 238850)
AWeibell@mayerbrown.com
KRISTIN W. SILVERMAN (SBN 341952)
KSilverman@mayerbrown.com
ELSPETH V. HANSEN (SBN 292193)
EHansen@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California  94306
Tel.:      (650) 331-2000
Fax:      (650) 331-2060

ANKUR MANDHANIA (SBN 302373)
AMandhania@mayerbrown.com
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA  94105
Tel.:      (415) 874-4230
Fax:      (415) 331-2060

[additional counsel listed on signature page]

Attorneys for Defendants
OPENAI FOUNDATION, OPENAI OPCO, LLC,
OPENAI HOLDINGS, LLC, OPENAI GROUP PBC,
and SAMUEL ALTMAN

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY LYONS, Administrator c.t.a and Personal Representative of the ESTATE OF STEIN-ERIK SOELBERG,<br><br>Plaintiff,<br><br>vs.<br><br>OPENAI FOUNDATION (F/K/A OPENAI INC.), *et al.*,<br><br>Defendants. | Case No. 3:25-cv-11037-WHO<br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Judge: Hon. William H. Orrick<br>Hearing Date: April 15, 2026<br><br>Hearing Time: 2:00 p.m.<br><br>Location: Courtroom 2, 450 Golden Gate Avenue, San Francisco, California 94102 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 3

BACKGROUND ................................................................................................................. 4

      A.     Suzanne Adams's Estate Files a State Court Action ............................................. 3

      B.     Soelberg's Estate Subsequently Files this Federal Court Action ........................... 5

      C.     State Court Coordinated Proceedings ..................................................................... 6

LEGAL STANDARD .......................................................................................................... 7

DISCUSSION ...................................................................................................................... 8

I.     This Parallel Federal Action Should be Dismissed Under *Colorado River*. ...................... 8

      A.     The *Colorado River* Factors Warrant Abstention. ................................................. 9

            1.     The state and federal actions are parallel ................................................. 9

            2.     Abstention is necessary to avoid piecemeal litigation and inconsistent rulings .......................................................................................................... 12

            3.     The California forum obtained jurisdiction first. ...................................... 15

            4.     State law provides the rule of decision for all claims .............................. 16

            5.     Hallmarks of forum shopping ................................................................... 17

      B.     The Court Should Dismiss This Later-Filed Federal Action. ............................... 17

II.    The Court Also Should Dismiss This Action Because Plaintiff Failed to File the Affidavit Required by California Code of Civil Procedure § 377.32. ............................... 18

CONCLUSION .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agena v. Cleaver-Brooks, Inc.*,
   2019 WL 11248590 (D. Haw. Oct. 31, 2019) ......................................................................... 19

*AIU, Inc. v. Cont'l Ins. Co.*,
   843 F.2d 1253 (9th Cir. 1988)................................................................................................. 12

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
   762 F.2d 205 (2d Cir. 1985)........................................................... 11, 12, 13, 14, 17

*Berk v. Choy*,
   607 U.S. __, 2026 WL 135974 (Jan. 20, 2026) ..................................................................... 19

*Clark v. Lacy*,
   376 F.3d 682 (7th Cir. 2004)................................................................................................... 11

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976).................................................... 1, 2, 4, 8, 9, 10, 12, 13, 14, 19

*De Saracho v. Custom Food Machinery*,
   206 F.3d 874 (9th Cir. 2000)................................................................................................... 19

*DeSantis v. City of Santa Rosa*,
   2007 WL 9706700 (N.D. Cal. Oct. 11, 2007)......................................................................... 8

*Equity Lifestyle Properties, Inc. v. Cnty. of San Luis Obispo*,
   548 F.3d 1184 (9th Cir. 2008)................................................................................................... 7

*Ernest Bock, LLC v. Steelman*,
   76 F.4th 827 (9th Cir. 2023)............................................................................................... 9, 12

*First County Bank v. OpenAI Found.*,
   CGC-25-631477 (Cal. Super. Ct. Dec. 11, 2025) ............................................................... 1, 4

*Forest v. Gas Co.*,
   2008 WL 4657833 (D. Haw. 2008) ............................................................................... 11, 18

*Galindo v. City of San Francisco*,
   718 F. Supp. 3d 1121 (N.D. Cal. 2024) ................................................................................ 18

*Garcia v. Adams*,
   2006 WL 403838 (E.D. Cal. Feb. 17, 2006)
   ................................................................................................................................................ 18

*Jackson v. Marten Transp., Ltd.*,
   2025 WL 342083 (C.D. Cal. Jan. 30, 2025) ................................................................... 14, 18

*Keiper v. Victor Valley Transit Auth.*,
   2015 WL 3929641 (C.D. Cal. June 25, 2015) ...................................................................... 18

*King v. United States*,
    2016 WL 146424 (C.D. Cal. Jan. 11, 2016) ........................................................... 18

*Kingman Reef Atoll Investments, L.L.C. v. United States*,
    541 F.3d 1189 (9th Cir. 2008) ........................................................................................ 7

*Kirby v. AT&T Corp.*,
    2022 WL 1227993 (S.D. Cal. Apr. 26, 2022) ........................................................... 18

*Knowlton v. OpenAI*,
    CGC-26-633067 ................................................................................................................ 3

*Mejia v. Sears, Roebuck & Co.*,
    2006 WL 8455451 (S.D. Cal. July 27, 2006) .................................................... 14, 16

*Mendocino Ry. v. Ainsworth*,
    113 F.4th 1181 (9th Cir. 2024) ....................................... 8, 9, 11, 12, 15, 18

*Montanore Minerals Corp. v. Bakie*,
    867 F.3d 1160 (9th Cir. 2017) ......................................... 9, 10, 11, 16, 17

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989) ..................................................................................... 10

*R.R. Street & Co. v. Transport Ins. Co.*,
    656 F.3d 966 (9th Cir. 2011) .............................................. 9, 13, 14, 17

*Revolon Monterey Energy LLC v. Peak Operator LLC*,
    2013 WL 12123689 (C.D. Cal. Dec. 27, 2013) ....................................................... 7

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ....................................................................................... 7

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*,
    862 F.3d 835 (9th Cir. 2017) .................................................................... 15, 16

*Taveras v. Bank of Am.*,
    89 F.4th 1279 (11th Cir. 2024) ................................................................................... 11

*Travelers Indem. Co. v. Madonna*,
    914 F.2d 1364 (9th Cir. 1990) ..................................................................................... 13

*In re Uber Techs., Inc. v. Passenger Sexual Assault Litig.*,
    745 F. Supp. 3d 869 (N.D. Cal. 2024) .................................................................... 16

*United States v. State Water Resources Control Bd.*,
    988 F.3d 1194 (9th Cir. 2021) ....................................................................................... 9

*White v. Kroger Co.*,
    2022 WL 888657 (N.D. Cal. Mar. 25, 2022) ........................................................... 8

*XPO GF Am., Inc.*, 2019 WL 8226077 (C.D. Cal. Sep. 27, 2019) ......................... 10, 11

**Statutes**

Cal. Code Civ. Proc. § 377.32 .............................................................. 1, 2, 4, 8, 18, 19, 20

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................ 19

Fed. R. Civ. P. 11 .............................................................................................. 19

Fed. R. Civ. P. 11(a) .......................................................................................... 19

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 7, 8

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 8

Fed. R. Civ. P. 17 .............................................................................................. 19

Fed. R. Civ. P. 17(b) .......................................................................................... 19

Fed. R. Civ. P. 17(b)(3) ..................................................................................... 19

1

**<u>NOTICE OF MOTION</u>**

2

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE

3

TAKE NOTICE THAT on April 15, 2026, at 2:00 p.m., or as soon thereafter as the matter may be

4

heard, before the Honorable William H. Orrick III in Courtroom 2 of the United States District

5

Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue,

6

San Francisco, California 94102, Defendants OpenAI Foundation, OpenAI OpCo, LLC, OpenAI

7

Holdings, LLC, OpenAI Group PBC, and Samuel Altman will, and hereby do, move this Court

8

under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing Plaintiff

9

Emily Lyons's Complaint, or in the alternative, an order staying the case pending the resolution of

10

the parallel action currently pending in California state court. *See First Cty. Bank v. OpenAI*

11

*Found.*, No. CGC-25-631477 (Cal. Super. Ct., S.F. Cnty.).

12

The Motion is based on two independent grounds.  First, the Court should abstain from

13

exercising its jurisdiction under *Colorado River Water Conservation District v. United States*, 424

14

U.S. 800 (1976), and dismiss the case.  There is an earlier filed California state court action (a)

15

brought on behalf of the same apparent real parties in interest (b) that alleges the very same seven

16

causes of action (c) based upon identical core factual allegations.  The state court here in San

17

Francisco already has coordinated that case with more than ten substantially similar cases.

18

Abstention-based dismissal is warranted not only to conserve judicial resources but to avoid

19

piecemeal litigation and inconsistent rulings in the whole series of related cases.  Should the Court

20

decline to dismiss outright, it should at a minimum stay this action under *Colorado River* pending

21

resolution of the parallel state court action involving identical claims and allegations.

22

Second, the complaint should be dismissed for Plaintiff's failure to comply with California

23

Code of Civil Procedure § 377.32.  The statute requires a plaintiff bringing suit as a decedent's

24

successor in interest to file an affidavit or declaration establishing the plaintiff's authority to

25

prosecute the action.  Plaintiff did not do so.

26

27

28

This motion is based upon this Notice of Motion, the accompanying memorandum in support, the Declaration of Kristin W. Silverman, the pleadings and papers on file in this action, arguments of counsel, and any other matter that the Court may properly consider.

## **STATEMENT OF ISSUES**

1.      Whether this Court should abstain from exercising jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) by dismissing or at a minimum staying the case, where the federal complaint (a) asserts the very same seven causes of action, (b) on behalf of the same apparent real parties in interest, and (c) based upon the same core factual allegations as an earlier-filed, parallel state court case that has already been coordinated as one of a dozen other similar cases in state court.

2.      Whether the complaint should be dismissed for failure to comply with California Code of Civil Procedure § 377.32, which requires a plaintiff bringing suit as a decedent's successor in interest to file an affidavit or declaration averring the plaintiff's authority to prosecute the action.

# MEMORANDUM OF POINTS AND AUTHORITIES

This case and an action previously filed in San Francisco Superior Court are two sides of the same coin. Both arise from the same tragic events: a murder-suicide in which Stein-Erik Soelberg killed his mother, Suzanne Adams, and immediately thereafter took his own life. Both cases are brought on behalf of estates, where the real parties in interest appear to be the same (*i.e.*, the two heirs (children/grandchildren) to the respective estates). Both cases allege the same causes of action based on the same core allegations. Both cases allege that Soelberg's use of ChatGPT caused the murder-suicide, notwithstanding that Soelberg had a well-documented history of severe mental illness and violence that long predated his use of ChatGPT. *See infra* p. 10 n.2. However, the *Adams* case was filed before this case, and the *Adams* case is now part of a California Judicial Council Coordinated Proceeding. As a result, this later-filed federal action should be dismissed in favor of the more comprehensive proceeding now pending in Superior Court.

*Adams* is one of more than a dozen pending lawsuits asserting similar claims against OpenAI in California state court (the "Related Actions").[1] Silverman Decl. ¶ 5. Like this case, the Related Actions all rest on the same core assertion: that design defects in GPT-4o, attributable to alleged design flaws and inadequate safety testing, caused harm to the plaintiffs or their family members. Because *Adams* and the other cases present overlapping questions of fact and law, and to promote judicial efficiency and minimize the risk of inconsistent decisions, the cases have been coordinated into a single JCCP proceeding for "ChatGPT Product Liability Cases." *See* Silverman Decl., Ex E (Order re: Petition for Coordination, *ChatGPT Prod. Liab. Cases*, JCCP No. 5431 (Cal. Super. Ct. Feb. 3, 2026)). To be clear, OpenAI does not contend that Plaintiffs are foreclosed from pursuing their claims—rather, the proper forum for doing so is through the state court coordinated proceedings.

Given the pendency of the earlier filed *Adams* case in the JCCP, this mirror image action should be dismissed in the interest "of wise judicial administration . . . conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. 800 at 817.

---

[1] Twelve cases raising similar claims are currently subject to a state court coordination order. *See* Silverman Decl., Ex. E. Additional cases are likely to be coordinated. Silverman Decl. ¶ 8.

The complaint also should be dismissed on the independent ground that Plaintiff failed to make the required *prima facie* showing that she has the right to act as decedent's successor in interest.  California Code of Civil Procedure § 377.32.

## BACKGROUND

On August 3, 2025, Stein-Erik Soelberg killed his mother, Suzanne Adams, and then took his own life.  *First Cty. Bank v. OpenAI Found.*, CGC-25-631477 (Cal. Super. Ct. Dec. 11, 2025) (the "*Adams* Complaint").  With the filing of this suit, Adams's estate and Soelberg's estate have each filed lawsuits alleging that Soelberg's actions resulted from his use of ChatGPT.

### A.    Suzanne Adams's Estate Files a State Court Action

The executor of Suzanne Adams's estate filed suit in state court on December 11, 2025.  *See Adams* Compl. The *Adams* Complaint names as defendants OpenAI Foundation, OpenAI OpCo, LLC, OpenAI Holdings, LLC, OpenAI Group PBC, OpenAI CEO Samuel Altman, Microsoft Corporation, and various unnamed OpenAI employees and investors. *Id.* ¶¶ 15-25.

The *Adams* Complaint alleges that Stein-Erik Soelberg was "a paranoid, delusional person engaged in conspiratorial thinking."  *Adams* Compl. ¶ 5.  It centers on Soelberg's months-long chats with ChatGPT, which he initiated and steered by presenting his own delusions and conspiracy theories. *Id.* ¶¶ 1-2.  The *Adams* Complaint alleges that Soelberg murdered Adams and committed suicide "[a] few weeks" after these conversations. *Id.* ¶ 69.  The *Adams* Complaint further alleges that design flaws in GPT-4o were a substantial factor in Soelberg's decision to commit the murder-suicide. *Id.* ¶¶ 70-115.

The *Adams* Complaint asserts seven causes of action: strict products liability (design defect), strict products liability (failure to warn), negligence (design defect), negligence (failure to warn), violations of California's Unfair Competition Law (UCL), wrongful death, and a survival action. *Adams* Compl. ¶¶ 116-206.  Plaintiff's UCL claim alleges that OpenAI's business practices were unlawful and unfair because "OpenAI, through ChatGPT's intentional design and monitoring processes, engaged in the practice of psychology without adequate licensure." *Id.* ¶¶ 182-83.  The *Adams* Complaint also alleges that OpenAI's practices were "fraudulent" under the UCL because

OpenAI "marketed GPT-4o as safe while concealing its capacity to validate paranoid delusions." *Id.* ¶186.  The UCL claim seeks an injunction requiring, among other things, "implementation of safeguards to prevent ChatGPT from validating users' paranoid delusions," "automatic conversation termination or escalation when users express delusional beliefs about identified third parties," "comprehensive safety warnings," "deletion of models . . . built from conversations obtained without appropriate safeguards," and "implementation of auditable data-provenance controls." *Id.* ¶ 189.

**B.      Soelberg's Estate Subsequently Files this Federal Court Action**

Emily Lyons, in her alleged capacity as the representative of Stein-Erik Soelberg's estate, subsequently filed this federal court action on December 29, 2025—eighteen days after the *Adams* complaint was filed in state court.  *See* Compl., ECF No. 1 (the "*Lyons* Complaint").  All of the defendants named in the *Lyons* Complaint are named as defendants in *Adams*.  *Id.* ¶¶ 9-15.

The allegations in this federal court complaint are virtually identical to those in the state court *Adams* complaint.  For example:

| ***Adams* State Complaint** | ***Lyons* Federal Complaint** |
|---|---|
| ● ChatGPT design defects caused the murder-suicide; OpenAI "rushed" GPT-4o to market to coincide with Google's competing chatbot launch. *Adams* Compl. ¶¶ 70, 88, 90. | ● ChatGPT design defects caused the murder-suicide; OpenAI released GPT-4o "months ahead of schedule" in response to Google's Gemini launch. *Lyons* Compl. ¶¶ 2, 60-62. |
| ● Soelberg told ChatGPT he believed "his mother and a friend had tried to poison him with psychedelic drugs dispersed through his car's air vents." *Adams* Compl. ¶ 60. | ● Soelberg told ChatGPT his mother "and her friend had tried to poison him with psychedelic drugs dispersed through his car's air vents." *Lyons* Compl. ¶ 43. |
| ● When Soelberg mentioned his mother's printer blinked, ChatGPT told him it was "not just a printer" but a "surveillance device" for "[p]assive motion detection." *Adams* Compl. ¶¶ 55-56 | ● Soelberg told ChatGPT that "the printer in his mother's office blinked when he walked by," and ChatGPT said it could be "a motion detector" giving warnings about his movements. *Lyons* Compl. ¶¶ 40-41. |
| ● ChatGPT compiled a list of 10+ "assassination attempts," including | ● ChatGPT tallied "over 10 attempts" on Soelberg's life, including poisoned |

| | |
|---|---|
| poisoned sushi, device tampering, and the "intercepted Wi-Fi printer." *Adams* Compl. ¶¶ 46-47. | sushi, device tampering, and the "intercepted Wi-Fi printer." *Lyons* Compl. ¶¶ 31-32, 52. |
| ● OpenAI changed GPT-4o's "core operating instructions not to challenge false premises" and prioritized user "engagement over safety." *Adams* Compl. ¶¶ 70, 74. | ● GPT-4o was "specifically designed to validate and encourage whatever ideas a user presents to it" because "it encouraged user engagement." *Lyons* Compl. ¶ 49. |

The *Lyons* complaint also asserts the same seven causes of action as the *Adams* action: strict products liability (design defect), strict products liability (failure to warn), negligence (design defect), negligence (failure to warn), violations of California's UCL, wrongful death, and a survival action. *Lyons* Compl. ¶¶ 67-154. As in the *Adams* state court action, the UCL claim alleges that OpenAI's business practices were unlawful and unfair because they violated California's regulations concerning the unlicensed practice of psychology, *id.* ¶¶ 130-31, and were "fraudulent" because OpenAI "marketed GPT-4o as safe while concealing its capacity to validate paranoid delusions," *id.* ¶ 134. The UCL claim also seeks essentially the same injunctive relief as that sought in *Adams*. *Id.* ¶ 137.[2]

## C.    State Court Coordinated Proceedings

The *Adams* lawsuit is one of more than a dozen California state court actions asserting virtually identical claims and allegations about OpenAI's design of GPT-4o (the "Related Actions"), the first of which was filed in August 2025. *See* Silverman Decl. ¶ 5. Each of the

---

[2] Both the *Lyons* and the *Adams* complaints ignore the public records demonstrating Soelberg's extensive history of severe mental illness and violence that long predated his use of ChatGPT. *See generally Lyons* Compl.; Adams Compl. For example, an affidavit that Emily Lyons filed in support of her effort to obtain a restraining order against Soelberg reflects that Soelberg "ha[d] a history of drug and alcohol abuse," as well as "suicidal tendencies," "prior suicide threats," beginning in 2010, and suicide threat(s) in front of his children starting in August 2017. Silverman Decl. ¶ 11 (quoting Silverman Decl., Ex. G at 7). Additionally, it reflects that the late Soelberg attempted suicide on multiple occasions, including "by overdosing on oxycontin" in or around 2018, "by jumping into the Long Island Sound," and by "stabb[ing] himself several times with a knife" while "drunk" around the summer of 2019. *Id.* (quoting Silverman Decl., Ex. G at 8); *see also* Silverman Decl., Ex. H at 5-6, 14-25 (police records reflecting that Soelberg had a "mental health history," was a "known [emotionally disturbed person]," and documenting multiple suicide attempts). The Court may consider these materials while ruling on this Rule 12(b)(1) motion. *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

Related Actions alleges that the design of GPT-4o caused the plaintiffs or their family members mental health injuries, and in some cases, death by suicide. *Id.* And like this action, each complaint in the Related Actions asserts claims for strict product liability (design defect), strict product liability (failure to warn), negligence (design defect), negligence (failure to warn), and UCL violation. *Id.* Several of the Related Actions, like this action, assert wrongful death and survival claims. *Id.*

On or around November 14, 2025, plaintiffs in seven of the Related Actions filed a Petition for Coordination and stipulated to a stay of their cases pending coordination. *See* Silverman Decl., Ex. D (Pet. for Coordination, *ChatGPT Prod. Liab. Cases*, JCCP No. 5431 (Cal. Super. Ct.)). The Petition for Coordination was granted on February 3, 2026, coordinating a total of 12 actions including *Adams*. *See* Silverman Decl., Ex. E. Judge Stephen Murphy issued the order granting coordination and recommending that the Superior Court in the County of San Francisco be the site for the coordinated proceedings, and further stayed all cases pending assignment of a coordination trial judge. *Id.* On February 23, 2026, the Presiding Judge of the San Francisco Superior Court assigned San Francisco Superior Court Judge Ethan P. Schulman to sit as coordination trial judge of those coordinated actions. Silverman Decl., Ex. F.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) "allows a defendant to move for a stay or dismissal of an action pursuant to the . . . *Colorado River* abstention doctrine[ ]." *Revolon Monterey Energy LLC v. Peak Operator LLC*, 2013 WL 12123689, at *1 (C.D. Cal. Dec. 27, 2013) (citing *Equity Lifestyle Properties, Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1188 (9th Cir. 2008)). In considering a Rule 12(b)(1) motion to dismiss, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of the

claims alleged in the complaint." *White v. Kroger Co.*, 2022 WL 888657, at *1 (N.D. Cal. Mar. 25, 2022). Courts apply Rule 12(b)(6) in considering a motion to dismiss for failure to comply with California Code of Civil Procedure § 377.32's affidavit requirement. *See DeSantis v. City of Santa Rosa*, 2007 WL 9706700, at *1 (N.D. Cal. Oct. 11, 2007).

## DISCUSSION

Two pending cases arise out of the same tragic, inextricably linked events. Both cases make the same core allegations and allege the same seven causes of action. Both cases appear to be brought on behalf of the same real parties in interest: the two beneficiary heirs to both the perpetrator and victim of a matricide/suicide. But unlike this parallel case, the earlier-filed state court case, *Adams*, is part of a larger coordinated state court proceeding in which a dozen Related Cases all allege (just as Plaintiff does here) that design defects and inadequate safety testing caused harm to the plaintiffs or their family members. Under well-established abstention doctrine, this case should be dismissed in favor of the more comprehensive state court proceeding.

The relevant *Colorado River* factors applied by the Ninth Circuit weigh decisively in favor of abstention here: the coordinated state proceedings will resolve the factual and legal questions presented; there is a substantial risk of piecemeal litigation and inconsistent rulings if this Court exercises jurisdiction; the state forum obtained jurisdiction first; all claims are governed by state law; and there are the hallmarks of forum shopping, *i.e.*, (i) the real parties in interest in *Adams* are also real parties in interest in *Lyons*, (ii) this case was filed in federal court *after Adams* was filed, *after* most of the Related Actions were filed, and *after* the petition for state-court coordination was pending. Allowing this action to proceed alongside the coordinated state proceedings would create an inevitable risk of patchwork litigation, inconsistent rulings, and needless duplication of discovery.

## I.    This Parallel Federal Action Should be Dismissed Under *Colorado River*.

The *Colorado River* doctrine requires courts to dismiss or stay federal litigation in favor of parallel state proceedings based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Mendocino Ry.*

1    *v. Ainsworth*, 113 F.4th 1181, 1187 (9th Cir. 2024) (quoting *Ernest Bock, LLC v. Steelman*, 76 F.4th

2    827, 836 (9th Cir. 2023)). That is the precise situation here.

3         The Ninth Circuit applies "an eight-factor balancing test to determine if a *Colorado River*

4    stay or dismissal is appropriate," assessing:

> (1) which court first assumed jurisdiction over any property at stake; (2) the
> inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4)
> the order in which the forums obtained jurisdiction; (5) whether federal law or state
> law provides the rule of decision on the merits; (6) whether the state court
> proceedings can adequately protect the rights of the federal litigants; (7) the desire
> to avoid forum shopping; and (8) whether the state court proceedings will resolve
> all issues before the federal court.

9    *Id.* (citing *R.R. Street & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). "Some

10   factors may not apply in some cases, and in some cases, a single factor may decide whether a stay

11   is permissible." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021)

12   (cleaned up). Where these factors "tip sharply" in favor of abstention, courts should dismiss rather

13   than stay the parallel federal court suit. *Mendocino*, 113 F.4th at 1188 n.5; *see also Montanore*

14   *Minerals Corp. v. Bakie*, 867 F.3d 1160 (9th Cir. 2017) (holding that *Colorado River* factors

15   support abstention and that the district court abused its discretion in declining to grant a stay).

16         **A.    The *Colorado River* Factors Warrant Abstention.**

17         Here, the relevant *Colorado River* factors "tip sharply" in favor of abstention and therefore

18   support dismissal. *Id.* at 1188 n.5.[3]

19         **1.    The state and federal actions are parallel**

20         The "threshold requirement" for a *Colorado River* dismissal or stay is that the state and

21   federal actions are "sufficiently parallel." *Ernest Bock*, 76 F.4th at 839. This factor turns on

22   "whether the state court proceeding is substantially similar to the federal proceeding." *Mendocino*,

23   113 F.4th at 1190-91. Courts "do not require exact parallelism under this factor; it is sufficient if

24

---

25   [3] Several factors are not relevant. The first and sixth factors are not applicable, as no property or

26   federal rights are at issue. The second factor—convenience of the forum—is neutral, as both the
     state and federal courts are located in California, and, like this case, the Related Cases (including

27   *Adams*) will be handled in San Francisco given Judge Schulman's assignment. *Mendocino*, 113
     F.4th at 1188 (describing this factor as "neutral" where "the state and federal courthouses are less

28   than 200 miles apart").

the proceedings are 'substantially similar.'" *Montanore*, 867 F.3d at 1170 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)).  Courts are particularly likely to find that the actions are parallel "when the federal action is but a 'spin-off' of a more comprehensive state litigation." *Nakash*, 882 F.2d at 1417.

The *Adams* state-court action and this *Lyons* action are the same in every way that matters. Both actions arise from the same allegations—Stein-Erik Soelberg's murder-suicide, which plaintiffs in both cases say was caused by Soelberg's use of ChatGPT.  This action names all of the defendants named in *Adams*.[4]  And both actions assert the exact same seven causes of action.

The factual and legal questions that will determine the outcome of both cases are nearly identical.  At their core, all seven causes of action in both the *Adams* and *Lyons* complaints turn on two common questions.  The first is whether OpenAI's creation of GPT-4o—including development, warning labels, and post-release conduct—fell short of an applicable legal standard. Both complaints say that it did, citing the same legal standards and making identical allegations about what OpenAI did (and why), as well as identifying identical alleged flaws in OpenAI's decisions.  *See Adams* Compl. ¶¶ 70, 74-81, 88, 90, 120-27, 133-47; *Lyons* Compl. ¶¶ 54-55, 60-62, 67-87, 88-107.  Deciding whether those claims have merit, as plaintiffs contend, or are meritless, as OpenAI contends, will require resolving the same facts and legal arguments in both cases.

The second critical common question is causation—whether Plaintiffs can fairly claim that GPT-4o somehow caused Soelberg to commit the murder-suicide.  Both complaints allege Soelberg's use of ChatGPT caused the murder-suicide—despite public records showing Soelberg had a long history of suicide attempts and violence *before* he used ChatGPT.  *See supra* n.2.  Both cases will have to resolve these causation issues.

To the extent *Lyons* raises one additional causation question not expressly presented in

---

[4] While the state court *Adams* complaint names an additional defendant (Microsoft), "[s]uits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *XPO GF Am., Inc.*, 2019 WL 8226077, at *3 (C.D. Cal. Sep. 27, 2019).  Critically, every defendant named in this federal action is also a defendant in the parallel state court case.

*Adams*—whether ChatGPT was also a substantial factor in causing Soelberg's suicide (in addition to the murder of Adams, which is the central question in *Adams*)—that difference does not defeat parallelism under *Colorado River*.  Resolving whether ChatGPT's alleged defects caused Soelberg to murder his mother will necessarily require the state court to evaluate the very same evidence relevant to whether those alleged defects also caused Soelberg to take his own life—including the nature and extent of Soelberg's preexisting mental illness, suicide attempts, and violence (*see supra* n.2); the content of his ChatGPT conversations; and the role (if any) those ChatGPT conversations played in his actions.  The "mere presence of additional . . . issues in one of the cases will not necessarily preclude a finding that they are parallel" under *Colorado River*.  *XPO GF Am., Inc.*, 2019 WL 8226077, at *3; *see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985) (affirming *Colorado River* dismissal where federal suit raised claims not identical to those in consolidated state proceedings).  Because the issues in *Lyons* are otherwise entirely subsumed by the issues in *Adams*, the two proceedings are still at least "substantially similar." *Mendocino*, 113 F.4th at 1190-91.  Accordingly, this threshold factor favors *Colorado River* abstention.

That conclusion also is not altered by the fact that *Adams* and *Lyons* were brought by different nominal plaintiffs. The Ninth Circuit has explained that "exact parallelism" is not required and what matters is whether the proceedings are "substantially similar." *Montanore*, 867 F.3d at 1170.  Plaintiffs "with 'nearly identical' interests are considered 'substantially the same' for *Colorado River* purposes." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004); *Taveras v. Bank of Am.*, 89 F.4th 1279, 1286 (11th Cir. 2024) ("The issues and parties do not have to be identical to be substantially similar.").  Here, the real parties in interest in the two cases appear to be the same, *see* Silverman Decl., Exs. B & C, and thus have nearly identical interests and should be considered substantially similar.

Courts have consistently abstained under *Colorado River* when the federal and state cases involve parallel claims like those here and in *Adams*.  For example, in *Forest v. Gas Co.*, the district court granted *Colorado River* abstention where federal and state cases arose from the same traffic

accident—even though one action was brought by the representative of the estate of a deceased victim and the other was brought by the co-guardian of a surviving victim.  2008 WL 4657833 (D. Haw. 2008).  The court rejected the argument "that the cases are not parallel because the plaintiffs are different" and held that the cases were "sufficiently similar for the purposes of this analysis." *Id.* at *3.  Similarly, in *Arkwright-Boston Mfrs.*, 762 F.2d at 205, the Second Circuit dismissed a federal suit on *Colorado River* grounds where the federal plaintiffs—insurance subrogees—were different from the plaintiffs in the more than 40 separate state court lawsuits, all of which arose from the same widespread power blackout.

Abstention is particularly appropriate here because the different named plaintiffs in the *Adams* and *Lyons* actions appear to represent the very same real parties in interest: Soelberg's adult children, who appear to be the heirs to both the Adams estate and the Soelberg estate, according to the two decedents' wills.  *See* Silverman Decl., Exs. B, C.  Those same individuals are thus the beneficiaries of the wrongful death and survival claims brought by the Soelberg estate in this federal action, as well as the beneficiaries of the claims brought by the Adams estate.  *See id.*  Because the apparent same real parties in interest are seeking to hold the same defendants liable for the same conduct, based on the same factual and legal theories, the parallelism factor strongly favors dismissal.

### 2. Abstention is necessary to avoid piecemeal litigation and inconsistent rulings.

The substantial potential for piecemeal litigation also strongly favors dismissal.  "Piecemeal litigation occurs when different tribunals consider the same issues, thereby duplicating efforts and possibly reaching different results."  *AIU, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).  Abstention is warranted when "concurrent cases would resolve common questions that could result in a waste of judicial resources."  *Mendocino*, 113 F.4th at 1189 (citing *Ernest Bock*, 76 F.4th at 837); *see Mejia v. Sears, Roebuck & Co.*, 2006 WL 8455451 (S.D. Cal. July 27, 2006) (dismissing action under *Colorado River* and holding that "the avoidance of piecemeal litigation factor tips the balance heavily in favor of abstention").

The Ninth Circuit holds that avoidance of piecemeal litigation "weighs significantly against

jurisdiction" when the state court has "consolidated multiple cases to create a comprehensive scheme" for resolving related claims. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 979-80 (9th Cir. 2011) (quoting *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)).

In *R.R. Street & Co.*, multiple insurance carriers filed coverage actions in Los Angeles County Superior Court arising from environmental tort lawsuits. *Id.* at 971. The state court consolidated those actions into a single complex proceeding establishing a "phased approach to the litigation" including coordinated discovery and rulings on preliminary issues. *Id.* at 971, 980. The insured's distributor and the distributor's own insurer—who had been brought into the consolidated state court action but had not asserted claims against one of the carriers—filed a separate federal court action seeking damages under the same excess liability policy. *Id.* at 972. The Ninth Circuit affirmed the district court's dismissal under *Colorado River*, finding a "highly interdependent" relationship between the federal claims and the comprehensive state proceeding. *Id.* at 979.

The Second Circuit reached the same conclusion in *Arkwright-Boston Mfrs. Mut. Ins. Co.*, finding that the potential for piecemeal litigation was the "paramount consideration" where the federal case was filed when more than 40 separate state court lawsuits arising from the same event—a widespread power blackout that gave rise to hundreds of claims against the City of New York and related entities—were awaiting consolidation. *Id.* at 211. The court affirmed *Colorado River* dismissal of a federal action in favor of consolidated proceedings that were underway in state court, reasoning that if the federal court refused to abstain, it would "force defendants to defend this complex litigation on two fronts" with the risk of "inconsistent disposition of these claims." *Id.*

Precisely the same concerns are present here. The parallel state court case is one of a dozen related actions pending in a California state court coordinated proceeding, all of which make largely the same factual allegations about Defendants' conduct and assert (like this complaint) claims for strict product liability (design defect and failure to warn), negligence (design defect and failure to warn), and UCL violations. Recognizing the risk of inconsistent rulings and verdicts, the Judicial

1   Council coordinated these state cases.  As in *R.R. Street* and *Arkwright*, allowing this federal action

2   to proceed in parallel with that coordinated state litigation would force OpenAI to defend virtually

3   identical claims on multiple fronts and risk inconsistent rulings on the core questions common to

4   all of the cases.

5       Proceeding with this action will also result in needless duplication of discovery.  *See*

6   *Jackson v. Marten Transp., Ltd.*, 2025 WL 342083 (C.D. Cal. Jan. 30, 2025) (*Colorado River*

7   abstention warranted where "the parties would [otherwise] engage in duplicative discovery and

8   fact-finding efforts").  All of the actions in the state court coordinated proceeding—including the

9   *Adams* complaint—share with *Lyons* the same core legal claims and theory of liability against

10  OpenAI.  Plaintiffs in these cases will therefore likely seek largely the same discovery from

11  OpenAI.  Requiring Defendants to respond to and negotiate extensive discovery now in this single

12  federal action—only to have to do the same thing in the coordinated state proceedings—would

13  create unnecessary duplication.

14      Even setting aside the broader coordinated state proceedings, the parallel *Adams* and *Lyons*

15  actions alone present a clear risk of piecemeal litigation.  The two cases arise from identical core

16  alleged facts—Stein-Erik Soelberg's use of ChatGPT and commission of a murder-suicide—and

17  assert the same seven causes of action against the same OpenAI Defendants.  *Adams* Compl. ¶¶

18  116-206; *Lyons* Compl. ¶¶ 67-154.  Both complaints make similar allegations about OpenAI's pre-

19  release process of designing and testing GPT-4o, as well as OpenAI's post-release conduct, and the

20  effects of those OpenAI decisions on Stein-Erik Soelberg's actions.  *Adams* Compl. ¶¶ 70-115;

21  *Lyons* Compl. ¶¶ 49-62.

22      If both cases proceed, two courts will be required to resolve the same factual and legal

23  questions.  Those questions include whether GPT-4o's design was defective, whether OpenAI's

24  safety warnings were adequate, and whether any design and warning issues were a substantial factor

25  in Soelberg's decision to commit murder and suicide—even where public records show that he had

26  a long history of suicide attempts and violence that predated his use of ChatGPT.  *See supra* n.2.

27  Asking two courts to resolve those very same questions carries the clear attendant risk of

28

inconsistent results. *Mejia*, 2006 WL 8455451, at *4 ("The adjudication of identical issues in two separate forums would create the potential for inconsistent results.").

The risk of inconsistent results is particularly acute given that both complaints seek comprehensive injunctive relief. While plaintiffs will not prevail on their claims, the state and federal complaints seek broad, multifaceted injunctions—directing OpenAI to, among other things, implement "safeguards to prevent ChatGPT from validating users' paranoid delusions," "automatic conversation termination or escalation when users express delusional beliefs," "comprehensive safety warnings," "deletion of models . . . built from conversations obtained without appropriate safeguards," and "implementation of auditable data-provenance controls." *Adams* Compl. ¶ 189; *see Lyons* Compl. ¶ 137. Should plaintiffs prevail in both forums, each court would independently exercise its discretion in determining the scope and timing of any injunction, resulting in a significant risk that the resulting terms would differ and make it impossible to comply with both. Even a small variation in how the two courts might define terms such as "appropriate safeguards" and "comprehensive safety warnings" would create inconsistent obligations.

### 3. The California forum obtained jurisdiction first.

The order in which the forums obtained jurisdiction also favors abstention. This factor "considers not only the filing dates of each action, but also 'the progress made in each case 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Mendocino*, 113 F.4th at 1189 (quoting *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 843 (9th Cir. 2017)). The Ninth Circuit held that this factor "favor[ed] dismissal" in *Mendocino* even where the state action preceded the federal action by less than a year and the state case was in its early stages— noting that when the federal action was filed, there had not been any discovery and no trial date had been set in the state action. *Id.* at 1189-90.

Here, the state forum obtained jurisdiction first. The *Adams* complaint was filed in San Francisco Superior Court on December 11, 2025—more than two weeks before the *Lyons* complaint was filed in this Court on December 29, 2025. But the timing of the two filings tells only part of the story. Seven additional lawsuits asserting substantially similar claims against

1    OpenAI were filed in California state courts on or around November 6, 2025, and the *Raine* action

2    was filed even earlier, on August 27, 2025.  Silverman Decl. ¶ 5.  A Petition for Coordination was

3    filed on November 14, 2025, more than a month before the federal complaint, seeking to coordinate

4    the Related Actions before a single judge.

5         The state proceedings are now further along than the federal action.  On February 3, 2026,

6    the coordination motion judge granted the Petition for Coordination.  Twelve cases are now subject

7    to the coordination order, and a coordination trial judge has been assigned, with a case management

8    conference set for July 24, 2026.  Silverman Decl ¶ 9.  Moreover, some discovery already has taken

9    place in the state proceedings: before the cases were coordinated and stayed, OpenAI responded to

10   90 written discovery requests served by the plaintiff in the *Raine* action alone.  *See id.* ¶ 10.

11        The "realities," *Mendocino*, 113 F.4th at 1189, here are straightforward:  the state forum

12   has obtained jurisdiction first and a coordinated proceeding is underway.  This factor therefore

13   favors abstention.

14        **4.    State law provides the rule of decision for all claims**

15        The case for abstention is especially strong where, as here, state law provides the rule of

16   decision and "the state law questions are themselves complex and difficult issues better resolved

17   by a state court."  *Montanore*, 867 F.3d at 1168-69 (quoting *Seneca*, 862 F.3d at 844).

18        The *Lyons* action before this Court raises only state law claims, and the claims involve

19   difficult and novel questions of state law.  Four of the seven claims are product liability claims, and

20   it is an open question whether artificial intelligence services are "products" for purposes of

21   California product liability law.  *See In re Uber Techs., Inc. v. Passenger Sexual Assault Litig.*, 745

22   F. Supp. 3d 869, 903-04 (N.D. Cal. 2024) (the "applicability of products liability torts to the digital

23   world" presents "novel questions of law"); *cf.* Order Sustaining Demurrer, *Social Media Cases*,

24   JCCP 5255, 2023 Cal. Super. LEXIS 76992 (Cal. Super. Ct. Oct. 13, 2023) (dismissing product

25   liability claims against Facebook, Instagram and other social media companies on the ground that

26   these platforms are not products).  Plaintiff's UCL claim also presents an issue of first impression—

27   whether California statutes regulating the practice of psychology apply to AI chatbots.  *Lyons*

28

1   Compl. ¶¶ 130-31.

2       The state court "is in a better position to address these issues than is the federal court."

3   *Montanore*, 867 F.3d 1160, 1169 (9th Cir. 2017).

4       **5.    Hallmarks of forum shopping**

5       The forum-shopping factor considers "whether either party improperly sought more

6   favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the

7   original proceeding." *Mendocino*, 113 F.4th at 1190. "[A]ny indication that a party 'sought to

8   manipulate the litigation [...] to wind up in the forum of its choosing' supports a finding of forum

9   shopping." *Id.*

10      Here, Plaintiff chose to file in federal court and avoid coordinated state court proceedings.

11  The real parties in interest here appear to be the same as the earlier filed state court action. Yet

12  Plaintiff's federal court filing was made not only *after* the Adams estate filed in state court but also

13  *after* a petition for JCCP coordination was filed in state court with *Adams* as a potential "add-on"

14  case to the JCCP petition. *See* Silverman Decl., Ex. E. Plaintiff selected a forum that would avoid

15  coordination and allow this case to bypass the coordinated cases and allow the real parties in interest

16  to diversify their litigation risk by having two separate courts weigh the exact same evidence and

17  resolve nearly identical questions.

18      **B.    The Court Should Dismiss This Later-Filed Federal Action.**

19      The *Colorado River* factors clearly favor abstention and this Court should dismiss this

20  action. The Ninth Circuit recently explained that when the *Colorado River* factors "tip sharply" in

21  favor of abstention, the district court should dismiss even though "[g]enerally, a stay rather than a

22  dismissal is appropriate under *Colorado River*." *Mendocino*, 113 F.4th at 1187 n.5. Indeed,

23  "*Colorado River* itself involved dismissal of a federal action." *Id.* And courts have granted

24  dismissal rather than a stay where the factors tipped less sharply in favor of abstention than they do

25  here. *See id.*; *R.R. Street*, 656 F.3d at 984; *Arkwright*, 762 F.2d at 212.

26      In the alternative, if the Court concludes that the *Colorado River* factors support abstention

27  but do not tip sharply enough to warrant dismissal, the Court should stay this action pending

28

17

1    resolution of the coordinated state court proceedings.  *See, e.g.*, *Forest*, 2008 WL 4657833; *Jackson*

2    *v. Marten Transp., Ltd.*, 2025 WL 342083 (C.D. Cal. Jan. 30, 2025).

3        **II.     The Court Also Should Dismiss This Action Because Plaintiff Failed to File**

4            **the Affidavit Required by California Code of Civil Procedure § 377.32.**

5        The Court also should dismiss the complaint on the independent ground that Plaintiff failed

6    to file the affidavit necessary to claim her bona fides as a rightful successor in interest to the

7    decedent.  California Code of Civil Procedure § 377.32 "requires a plaintiff to avow, under penalty

8    of perjury, among other items, that they are the true successor in interest to decedent's estate, no

9    other person has a superior right to commence a proceeding, and that there is no proceeding then

10   currently pending in California for the administration of the decedent's estate."  *Kirby v. AT&T*

11   *Corp.*, 2022 WL 1227993, at *1 (S.D. Cal. Apr. 26, 2022).  The rule provides that a person who

12   "seeks to commence an action or proceeding . . . as the decedent's successor in interest" must file

13   an affidavit averring specific facts and attaching specific evidence, including "if the decedent's

14   estate was administered, a copy of the final order showing the distribution of the decedent's cause

15   of action to the successor in interest" and either a statement that the declarant "is the decedent's

16   successor in interest" or "is authorized to act on behalf of the decedent's successor in interest."

17   CCP § 377.32(a)(4), (5).  Moreover, a "certified copy of the decedent's death certificate" must be

18   attached to the affidavit."  *Id.* § 377.32(c).

19       Federal courts sitting in diversity jurisdiction, as this Court does here, have consistently

20   held that plaintiffs must comply with this state-law requirement. *See, e.g.*, *Kirby*, 2022 WL

21   1227993; *Galindo v. City of San Francisco*, 718 F. Supp. 3d 1121, 1131 (N.D. Cal. 2024); *King v.*

22   *United States*, 2016 WL 146424, at *6 (C.D. Cal. Jan. 11, 2016).  Thus, "federal courts have

23   dismissed claims brought by successors in interest where the plaintiff fails to allege facts or attach

24   documents to the complaint showing compliance with [Section 377.32]."  *King*, 2016 WL 146424,

25   at *6 (quoting *Keiper v. Victor Valley Transit Auth.*, 2015 WL 3929641, at *5 (C.D. Cal. June 25,

26   2015); *see, e.g.*, *Kirby*, 2022 WL 1227993, at *1; *Garcia v. Adams*, 2006 WL 403838, at *11-12

27   (E.D. Cal. Feb. 17, 2006).

28

The Federal Rules, including Rules 11 and 17, support this longstanding practice—indeed, Rule 11(a) expressly contemplates that state law may require represented parties to verify pleadings or sign affidavits, as the Supreme Court recently recognized in *Berk v. Choy*, 607 U.S. __, 2026 WL 135974 (Jan. 20, 2026).  In *Berk*, a Delaware law requiring a third-party affidavit in medical malpractice suits was preempted by Rule 8 under the Rules Enabling Act, but the Court explained that state affidavit requirements where "represented parties are required by rule or statute to verify pleadings or sign affidavits" are incorporated under Rule 11(a) and thus apply in federal court.  *Id.* at *5.

Unlike the Delaware law at issue in *Berk*, California's Section 377.32 requires an affidavit from the represented party, not a third party.  CCP § 377.32(a) (requiring an affidavit from "the person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest").  Because Rule 11(a) expressly contemplates that state law may require represented parties to verify pleadings or sign affidavits, Section 377.32's affidavit requirement is consistent with the Federal Rules under *Berk*.

Moreover, the Federal Rules expressly incorporate state law on questions of capacity to sue.  Federal Rule of Civil Procedure 17(b) provides that the "capacity of . . . a party acting in a representative capacity" to sue "is determined by . . . the law of the state where the court is located."  Fed. R. Civ. P. 17(b)(3); *see, e.g.*, *Agena v. Cleaver-Brooks, Inc.*, 2019 WL 11248590, at *11 & n.19 (D. Haw. Oct. 31, 2019) (citing Rule 17(b) and applying Hawaii law in determining plaintiffs' capacity to sue); *De Saracho v. Custom Food Mach.*, 206 F.3d 874, 878 (9th Cir. 2000) ("A defendant must challenge a plaintiff's authority to sue . . . in the responsive pleading or by motion before pleading").

Here, the relevant California law is Section 377.32, which establishes the mechanism by which a person demonstrates capacity to sue on behalf of a decedent's estate.  Thus, the Section 377.32 requirements are effectively incorporated into the Federal Rules, rendering them applicable here.

Plaintiff has not complied with Section 377.32.  Plaintiff did not file the "affidavit or

declaration under penalty of perjury" that the statute requires.  The complaint should therefore be dismissed.

### CONCLUSION

The Court should dismiss the complaint or, at a minimum, stay this litigation pending resolution of the parallel *Adams* action in state court.  Alternatively, the Court should dismiss the case due to Plaintiff's failure to comply with Section 377.32.

1

DATED:        March 10, 2026

2

By: */s/ Edward D. Johnson*

3

EDWARD D. JOHNSON (SBN 189475)
ANTHONY J WEIBELL (SBN 238850)

4

KRISTIN W. SILVERMAN (SBN 341952)
ELSPETH V. HANSEN (SBN 292193)

5

MAYER BROWN LLP
Two Palo Alto Square, Suite 300

6

3000 El Camino Real

7

Palo Alto, CA  94306
Tel.:  (650) 331-2000

8

Fax:  (650) 331-2060

9

ANKUR MANDHANIA (SBN 302373)
AMandhania@mayerbrown.com

10

MAYER BROWN LLP

11

575 Market Street, Suite 2500
San Francisco, CA  94105

12

Tel.:  (415) 874-4230
Fax:  (415) 331-2060

13

ANDREW J. PINCUS (*pro hac vice*

14

*forthcoming*)
APincus@mayerbrown.com

15

MAYER BROWN LLP

16

1999 K Street, N.W.
Washington, D.C.  20006

17

Tel.:  (202) 263-3000
Fax:   (202) 263-3300

18

GRAHAM WHITE (*pro hac vice*

19

*forthcoming*)
GWhite@mayerbrown.com

20

MAYER BROWN LLP

21

1221 Avenue of the Americas
New York, New York  10020

22

Tel.:  (212) 506-2500
Fax:   (212) 262-1910

23

24

Attorneys for Defendants
OPENAI FOUNDATION, OPENAI OPCO,

25

LLC, OPENAI HOLDINGS, LLC, OPENAI
GROUP PBC, and SAMUEL ALTMAN

26

27

28

21