Elizabeth "Ani" Lubben Zotti (*pro hac vice)*
Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Email: ani.zotti@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice* to be applied for)
Jacob Berman (SBN 32717)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
jakeb@hbsslaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMILY LYONS, Administrator c.t.a. and Personal Representative of the ESTATE OF STEIN-ERIK SOELBERG,<br><br>Plaintiff,<br><br>v.<br><br>OPENAI FOUNDATION (F/K/A OPENAI, INC.), a Delaware corporation, OPENAI, INC., a Delaware corporation, OPENAI OPCO LLC, a Delaware limited liability company, OPENAI HOLDINGS, LLC, a Delaware limited liability company, OPENAI GROUP PBC, a Delaware public benefit corporation SAMUEL ALTMAN, an individual, JOHN DOE EMPLOYEES 1-10, and JOHN DOE INVESTORS 1-10,<br><br>Defendants. | Civil Action No. 3:25-cv-11037-RS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Judge: Hon. Richard Seeborg<br><br>Hearing Date: April 16, 2026<br>Hearing Time: 1:30 p.m.<br><br>Location: Courtroom 3, 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, California 94102 |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. THIS CASE SHOULD NOT BE STAYED OR DISMISSED ..... 4

A. Federal Courts May Abstain Only in Exceptional Circumstances ..... 4

B. No Factor Favors a Stay or Dismissal. ..... 5

1. Defendants fail to prove that *Adams* will completely resolve the issues between the parties in this matter. ..... 5

2. Any concerns for piecemeal litigation do not justify a stay or dismissal. ..... 8

3. Although California obtained jurisdiction two weeks earlier, litigation in federal court is currently scheduled to proceed first. ..... 10

4. Plaintiff's choice of a federal forum was not improper. ..... 11

5. This is not a rare circumstance in which the use of state law is relevant to this analysis. ..... 12

C. Plaintiff Has Cured Any Defect Under California Code of Civil Procedure § 377.32. ..... 12

V. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985) .......... 8, 10

*Bogard v. TikTok Inc.*, No. 24-CV-03131-VKD, 2025 WL 604972 (N.D. Cal. Feb. 24, 2025) .......... 12

*Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004) .......... 8

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) .......... *passim*

*DeSantis v. City of Santa Rosa*, No. C 07-03386 JSW, 2007 WL 9706700 (N.D. Cal. Oct. 11, 2007) .......... 3

*Ernest Bock, LLC v. Steelman*, 76 F.4th 827 (9th Cir. 2023) .......... *passim*

*Est. of Adams v. Cnty. of San Bernardino*, No. EDCV 24-1447-KK-SHKX, 2024 WL 5413155 (C.D. Cal. Nov. 26, 2024) .......... *passim*

*Est. of Merlin Factor v. Cnty. of San Bernardino*, Case No. EDCV-14-01289-DMG-AGRx, 2015 WL 13916251 (C.D. Cal. Apr. 8, 2015) .......... 13, 14

*First Cty. Bank v. OpenAI Found.*, CGC-25-631477 (Cal. Super. Ct. Dec. 11, 2025) .......... 1, 2

*Forest v. Gas Co., LLC*, 2008 WL 4657833 (D. Haw. Oct. 20, 2008) .......... 8

*Garcia v. Adams*, No. F 04-5999 AWI SMS, 2006 WL 403838, at *12 (E.D. Cal. Feb. 17, 2006) .......... 14

*Goodin v. Vendley*, 356 F. Supp. 3d 935 (N.D. Cal. 2018) .......... 3

*Hayes v. Cnty. of San Diego*, No. 07CV1738 DMS (JMA), 2014 WL 11878351 (S.D. Cal. Apr. 3, 2014) .......... 13

*Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002) .......... 3

*Intel Corp. v. Advanced Micro Devices, Inc.*,
12 F.3d 908 (9th Cir. 1993) .......... 1, 5, 6, 8

*King v. United States*,
No. 515CV00753CASDTBX, 2016 WL 146424 (C.D. Cal. Jan. 11, 2016) .......... 14

*Kirby v. AT&T Corp.*,
No. 321CV01680BENBGS, 2022 WL 1227993 (S.D. Cal. Apr. 26, 2022) .......... 14

*Mendocino Ry. v. Ainsworth*,
113 F.4th 1181 (9th Cir. 2024) .......... 4, 5, 8, 12

*Montanore Mins. Corp. v. Bakie*,
867 F.3d 1160, 1170 (9th Cir. 2017) .......... 7, 11, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 3, 9, 12

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*,
925 F.2d 1193 (9th Cir. 1991) .......... 10

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
656 F.3d 966 (9th Cir. 2011) .......... 10, 11

*Robertson v. Dean Witter Reynolds, Inc.*,
749 F.2d 530 (9th Cir. 1984) .......... 3

*Ryan v. Johnson*,
115 F.3d 193 (3d Cir. 1997) .......... 10

*Sanders v. Kennedy*,
794 F.2d 478 (9th Cir. 1986) .......... 4

*Seneca Ins. Co. v. Strange Land, Inc.*,
862 F.3d 835 (9th Cir. 2017) .......... 5, 8, 9, 11

*Smith v. Cent. Ariz. Water Conservation District*,
418 F.3d 1028 (9th Cir. 2005) .......... 5

*Travelers Indem. Co. v. Madonna*,
914 F.2d 1364, 1370 (9th Cir. 1990) .......... 11, 12

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
No. MDL 3084 CRB, 2024 WL 4211217 (N.D. Cal. Aug. 15, 2024) .......... 12

*United States v. State Water Res. Control Bd.*,
988 F.3d 1194 (9th Cir. 2021) .......... 4, 9, 10

## I. INTRODUCTION

Plaintiff Emily Lyons ("Ms. Lyons") submits this opposition to Defendants' Motion to Dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). ECF No. 22. Defendants ask this court to: (1) dismiss, or at least stay, this action under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), in favor of a state-court case brought by a different estate; and (2) dismiss on the separate ground that Plaintiff has not yet filed an affidavit under California Code of Civil Procedure § 377.32 purporting to establish her authority to sue as successor in interest. Both requests should be rejected. *Colorado River* is a narrow and exceptional doctrine that does not apply where, as here, the state proceeding will not necessarily resolve all issues in this federal action. And any technical defect under § 377.32 is easily and routinely cured by filing the required declaration, which has been filed along with this brief; it is not a basis for dismissal of a wrongful-death and survival action at the pleading stage.

As a result of Defendants' allegedly defective chatbot, ChatGPT, Suzanne Adams ("Ms. Adams") and her son, Stein-Erik Soelberg ("Mr. Soelberg"), were killed in two separate acts on August 5, 2025. Mr. Soelberg killed Ms. Adams and then committed suicide. Their estates have each initiated legal proceedings to recover from Defendants: Ms. Adams' estate filed its action in state court, *see First Cty. Bank v. OpenAI Found.*, CGC-25-631477 (Cal. Super. Ct. Dec. 11, 2025), while Mr. Soelberg's estate filed this action in federal court. In their motion to dismiss, Defendants erroneously argue that these cases are parallel, and therefore this suit in federal court should be dismissed. However, the two cases are not parallel because they involve two separate injuries based on similar but not identical liability theories. As a result, even if the plaintiff prevails in *Adams*, that will not resolve whether Defendants are liable in this case. *See, e.g., Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) ("Under the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay."). Therefore, there is no basis to dismiss or stay this case.

## II. BACKGROUND

On August 5, 2025, Stein-Erik Soelberg killed his mother and then stabbed himself to death. During the months prior, Mr. Soelberg spent hundreds of hours in conversations with Defendants' chatbot product, ChatGPT. The model used by Mr. Soelberg, GPT-4o, was intentionally designed by Defendants to remember, confirm, and mirror whatever a user typed into its interface, without regard for inaccuracies or delusions. As a result, ChatGPT created and expanded on Mr. Soelberg's paranoia, repeatedly telling him that his family and friends were surveilling him and trying to kill him. This directly encouraged a tragic end to his and his mother's lives.

On December 29, 2025, the Estate of Mr. Soelberg ("Plaintiff") filed suit in federal court, seeking redress for the harms caused by five OpenAI-related companies, Samuel Altman, ten John Doe employees and ten John Doe investors. ECF No. 1. The Complaint articulates claims for both strict and negligent product liability, under both the design-defect and failure-to-warn theories, alleging that Mr. Soelberg's interactions with ChatGPT caused him to kill himself. *Id.* at 18- 26. It also alleges a violation of California's Unfair Competition Law, a wrongful death and a survival action. *Id*. at 29-33.

Two weeks before this suit was filed, on December 11th, the executor of the estate of Mr. Soelberg's mother, Ms. Adams, filed suit in the Superior Court of California. *First Cty. Bank v. OpenAI Found.*, CGC-25-631477 (Cal. Super. Ct. Dec. 11, 2025). The *Adams* suit alleges the same claims against some, though not all, of the same defendants (it also names Microsoft, Corp.). ECF No. 22-2 at 2.

Although the two actions share some characteristics, they are distinct in that they must prove fundamentally different theories of harm. While the *Adams* complaint alleges that Mr. Soelberg's interactions with ChatGPT caused him to kill his mother, this Complaint alleges that they caused him to kill himself. More generally, while this suit alleges harms that Defendants' product causes to users, the *Adams* suit is focused on harms caused to third parties: "This lawsuit seeks to hold Defendants accountable for the wrongful death of Suzanne Adams and to obtain the injunctive relief necessary to prevent ChatGPT from driving vulnerable users toward violence against innocent people." *Id*. at 6.

Plaintiff does not dispute that several additional suits have been filed against Defendants in California state court by other individuals and estates of deceased persons, many of them alleging product liability and wrongful death claims for harms caused by ChatGPT. *See* ECF No. 22 at 11-12. An order coordinating the proceedings of these suits appears to have been granted on February 23, 2026. *See* ECF No. 22-7 at 2.

On March 10, 2026, Defendants filed a Motion to Dismiss Plaintiff's Complaint based on Federal Rule of Civil Procedure 12(b)(1), asking this Court to abstain from exercising its jurisdiction in light of the *Adams* case. *See* ECF No. 22. Defendants' Motion also argues that the Complaint should be dismissed based on Rule 12(b)(6). Plaintiff responds here in opposition to both grounds.

## III. LEGAL STANDARD

Courts in the Northern District of California have determined that "[t]he *Colorado River* doctrine is 'a form of deference to state court jurisdiction' and not a form of abstention." *Goodin v. Vendley*, 356 F. Supp. 3d 935, 943 (N.D. Cal. 2018) (quoting *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1137 (9th Cir. 1990) and citing *Colorado River*, 424 U.S. 800). "Under *Colorado River*, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, *may* justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter." *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (internal quotation marks and citations omitted, emphasis added). The doctrine is properly applied only in "exceptional circumstances." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

Defendants separately argue that the Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Courts assess motions to dismiss based on California Code of Civil Procedure § 377.32 under Rule 12(b)(6) standards. *See DeSantis v. City of Santa Rosa*, No. C 07-03386 JSW, 2007 WL 9706700, at *1 (N.D. Cal. Oct. 11, 2007). A "complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds*,

*Inc*., 749 F.2d 530, 534 (9th Cir. 1984). On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

## IV. THIS CASE SHOULD NOT BE STAYED OR DISMISSED

This case should not be stayed or dismissed under the *Colorado River* doctrine. Defendants' argument fails because they fail to address, let alone demonstrate, that the *Adams* case will provide a complete and prompt resolution of the issues presented in this federal case. As the Ninth Circuit has explained, "'If there is any substantial doubt as to' whether 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties . . . it would be a serious abuse of discretion to grant the stay or dismissal at all.'" *United States v. State Water Res. Control Bd*., 988 F.3d 1194, 1203 (9th Cir. 2021) (quoting *Moses H. Cone*, 460 U.S. at 28). *See also Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 841 (9th Cir. 2023) ("[W]e have a 'substantial doubt as to whether the state proceedings will resolve the federal action.' . . . As both the Supreme Court and our court have held, such a doubt 'precludes the granting of a stay' under *Colorado River*.") (citations omitted). As demonstrated below, Defendants do not and cannot prove that they meet that standard in seeking *Colorado River* dismissal.

### A. Federal Courts May Abstain Only in Exceptional Circumstances

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. That obligation applies even when a similar or identical action is pending in state court. As the Ninth Circuit recently reaffirmed, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1187–88 (9th Cir. 2024) (quoting *Colorado River*, 424 U.S. at 817). The rule is clear: the existence of parallel litigation does not diminish the federal courts' duty to exercise jurisdiction, and dismissal or a stay under the *Colorado River* doctrine remains the rare exception, not the norm.

The Ninth Circuit has explained that "*Colorado River* is not an abstention doctrine, though it shares the qualities of one." *State Water Res. Control Bd*., 988 F.3d at 1202. Moreover, "the Supreme Court has made clear that a *Colorado River* stay [of federal proceedings in favor of state

proceedings] is proper only in 'exceptional circumstances.'" *Bock*, 76 F.4th at 832 (quoting *Colorado River*, 424 U.S. at 813). Such circumstances are "exceedingly rare", *Smith v. Cent. Ariz. Water Conservation District*, 418 F.3d 1028, 1033 (9th Cir. 2005), and "'the exception, not the rule.'" *Mendocino Ry.*, 113 F.4th at 1187 (quoting *Colorado River*, 424 U.S. at 813). "The underlying principle guiding this review is a strong presumption *against* federal abstention." *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017). In evaluating whether a stay is merited, this Court will consider the following eight factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Mendocino Ry.*, 113 F.4th at 1188.

But as established in the following subsection, Defendants' failure to establish the eighth factor—whether the *Adams* proceedings in state court will resolve all issues before this court—by itself requires that their motion be denied.

**B. No Factor Favors a Stay or Dismissal.**

**1. Defendants fail to prove that *Adams* will completely resolve the issues between the parties in this matter.**

Defendants do not even address the key factor under the *Colorado River* doctrine, which precludes dismissal or a stay of this action. In *Intel*, 12 F.3d at 913, the Ninth Circuit explained that "[u]nder the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." The Ninth Circuit explained that the Supreme Court has "declar[ed] that a district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will end the litigation." *Id.* (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)). Thus, the Ninth Circuit held that a *Colorado River* stay could not be entered, because the "concurrent state court proceedings will resolve all the issues in this action *only* if the arbitration

award is confirmed and if the state court's resolution of the copyright challenge to the award is deemed to have collateral estoppel effect in federal court." *Id.*

Similarly here, there is substantial doubt that *Adams* will resolve all issues in this federal action. Even if the plaintiff in *Adams* prevails, then this case would need to proceed to provide the Soelberg estate an opportunity to prove its case. As in *Intel*, the *Adams* case could theoretically resolve this federal matter *only* if the defendants in that case prove they did not engage in wrongful conduct *and* if a finding or ruling to that effect would have collateral estoppel effect in this Court. Defendants make no attempt to establish that such a finding would lead to collateral estoppel here, but that is irrelevant because a finding in favor of the plaintiff in *Adams* would not resolve all issues in this matter, including causation. Although both the *Adams* state-court case and this *Soelberg* case arise from the same general set of circumstances, each case rests on a different theory of causation. Ms. Adams' estate must show that, but for Mr. Soelberg's interactions with Defendants' defective chatbot, Mr. Soelberg would not have killed her. In this case, Mr. Soelberg must prove that, but for his interactions with Defendants' defective chatbot, he would not have killed *himself*. Although the claims are similar and rest on *some* of the same facts, the resolution of *Adams* would not determine the resolution of this federal case.

The Ninth Circuit has held that two actions are not parallel even when the parties are exactly the same *and* the majority of the claims are the same. In *Bock*, a state court plaintiff received a judgment for a breach of contract against a defendant in state court. 76 F.4th at 832. The plaintiff then filed a second claim in federal court against defendants, alleging that, following the decision in state court, the defendants had improperly transferred assets to avoid paying that judgment. *Id*. When the state court judgment was vacated, the defendant petitioned the federal court to abstain, arguing that both courts would now be deciding the same issues. *Id*. The Ninth Circuit held that the two cases were not parallel, and a stay could not be issued, because if the state court decided, again, that there was a breach of contract, it would not resolve the improper transfer issue in federal court. The "federal litigation [would] be fully resolved *only if* [the] parallel state court proceedings end[ed] in *one* of [the] several possible outcomes." *Id*. (emphasis added).

The *Adams* and the *Soelberg* cases are even less parallel than the cases in *Bock*, because however the *Adams* case resolves, the primary dispute underlying this case will remain. If the *Adams* case determines that ChatGPT is responsible for the murder of Suzanne Adams, the issue of whether ChatGPT is responsible for Mr. Soelberg's suicide would remain unresolved. If the *Adams* case determines that ChatGPT is *not* responsible for Ms. Adams' murder, it does not preclude this court from finding that it *is* responsible for Mr. Soelberg's suicide.

Defendant's arguments to the contrary fall short. They argue that the two sets of claims are parallel because both must show that "OpenAI's creation of GPT-4o . . . fell short of an applicable legal standard" and that "GPT-4o . . . caused Soelberg to commit the murder-suicide." ECF No. 22 at 15. But hyphenating the words "murder" and "suicide" cannot hide the fact that two different harms to two different individuals occurred, and therefore two different chains of causation must be proven. Defendants admit that while the *Adams* plaintiff must demonstrate that ChatGPT was "a substantial factor in causing . . . the murder of Adams", the plaintiff in this case "raises one additional causation question not expressly presented in *Adams* - whether ChatGPT was . . . a substantial factor in causing Soelberg's suicide." *Id.* at 15-16. In doing so, Defendants admit that parallelism does not exist here: the resolution of the *Adams* case would not resolve all of the issues in this case.

In the few instances where the Ninth Circuit has deemed two cases to be parallel despite asserting slightly different claims, the two suits were generally clear mirrors of each other: the plaintiff in the first is the defendant in the second and vice versa, and both suits are fighting over the same issue. In *Montanore Mins. Corp. v. Bakie*, the Court recognized this mirrored structure and found the proceedings were parallel "because they both concern rights to the [same set of mining c]laims, name the same pertinent parties, and attempt to accomplish the same goal (namely, extinguishing the Defendants' rights to the Subject Claims)." 867 F.3d 1160, 1170 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017). The court in *Mendocino Railway* emphasized the same structure, noting that the "federal complaint does not allege any other instances of an existing conflict with the [plaintiffs] outside of those being litigated in the State

Action." *Mendocino Ry.*, 113 F.4th at 1192. The court found it "difficult . . . to conceptualize [the Federal Action] as anything other than a spinoff of the [State Action]." *Id*.

Such a plaintiff-defendant swap does not exist here. Defendants here are also the Defendants in *Adams*, and the plaintiffs in each case are individually suing for separate harms. In *Bakie* and *Mendocino Railway*, the federal court had every right to be "confident that the state court . . . [would] resolve all of the claims." The question at the heart of this case—whether ChatGPT caused Mr. Soelberg's suicide—is not before the state court and therefore cannot be resolved by that court.

Finally, Defendants assert that the real parties in interest in both of these cases are the same: Mr. Soelberg's children and Ms. Adams' grandchildren. But even if true, that has no bearing on whether the *Adams* case will necessarily resolve this case. In *Intel*, the Court held that a state case between two parties did not justify a *Colorado River* stay in a federal case between the same parties, because there was "a substantial doubt as to whether the state court proceedings will resolve all of the disputed issues in this case." 12 F.3d at 913 n.7. Moreover, the cases Defendants cite in support of its proposition all pre-date the extensive Ninth Circuit precedent on this issue and are readily distinguished.[1]

**2. Any concerns for piecemeal litigation do not justify a stay or dismissal.**

Although both the *Adams* case and this case are likely to consider some of the same legal issues, partially duplicative litigation does not merit a *Colorado River* dismissal or stay even when a group of related cases are consolidated in state court. In *Seneca*, the Ninth Circuit stated that a "general preference for avoiding piecemeal litigation is insufficient to warrant abstention . . . ."

[1] The first is a Seventh Circuit case in which the court held that two derivative shareholder suits were parallel, even though the plaintiff shareholders were different. *Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004). *Clark* applied a different standard than the Ninth Circuit applies, holding that for cases to be parallel, "there should be a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Id*. at 686 (citation omitted). In contrast, the Ninth Circuit bars a *Colorado River* stay if there is a "substantial doubt as to whether the state proceedings will resolve the federal action." *Bock*, 76 F.4th at 841 (quoting *Intel*, 12 F.3d at 913). The second case cited by Defendants applied an erroneous standard under Ninth Circuit law, stating that a "'suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Forest v. Gas Co., LLC*, 2008 WL 4657833, at *3 (D. Haw. Oct. 20, 2008) (quoting *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc*., 962 F.2d 698, 700 (7th Cir. 1992)). The court did not even discuss whether the state case would resolve the federal action. Similarly, the final case cited by Defendants, from forty years ago in the Second Circuit, does not discuss whether the state court case would resolve the issues of the federal action. *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 212 (2d Cir. 1985).

*Seneca*, 862 F.3d at 842. The Court held that "reasons that the district court offered to justify abstention—that the parallel proceedings will involve piecemeal disposition of the issues, that state law provides the rule of decision, and that the state proceeding is better suited to promote resolution of all the issues among the parties—are likely to be present in nearly every instance of concurrent state and federal suits where state law provides the rule of decision." *Id*. at 847. Moreover, "[t]hese concerns 'do not create the 'exceptional circumstances' required for *Colorado River* deference because they are present to this degree in many instances of parallel federal-state litigation.'" *Id*.

In *Bock*, the Ninth Circuit held that "the piecemeal litigation and order of jurisdiction factors support a stay." 76 F.4th at 837 (footnote omitted). Nonetheless, as discussed above, the Court held that, "Following the Supreme Court's instruction in *Moses Cone*, we cannot uphold a stay as the New Jersey proceeding may not fully resolve the issues pending before the district court." *Id*. at 843. *See id*. at 837 n.14 (citing *Seneca* for the proposition that "the mere existence of piecemeal litigation is not sufficient on its own to warrant a stay").

The bar for such circumstances is high and is not met here. In *Colorado River*, the Court noted multiple confounding factors in affirming dismissal of the action. Congress had passed an amendment explicitly banning piecemeal adjudication of water rights in a river system, and a "concern [with piecemeal litigation] is heightened with respect to water rights, the relationships among which are highly interdependent." 424 U.S. at 819.

No such circumstances exist in this case. The *Adams* action and this case both assert that OpenAI's product was defective and unsafe, and that Mr. Soelberg's use of the product resulted in harm. However, each case focuses on a separate act with its own consequent injury. These claims are not "highly interdependent" in the manner of water rights, where all claims must share the same resource. There is no federal legislation relevant to the issue. This case, the *Adams* case, and all the similar cases against Defendants in state court are simple, standard tort claims. Their only uniqueness is their application to a new piece of technology.

Defendants argue that the coordination of product liability cases against them in state court should weigh in favor of their motion, but the Ninth Circuit has rejected this argument. In *United States v. State Water Res. Control Bd.*, the court found that dismissal of a federal action was not

merited even though a set of eleven similar actions were coordinated in state court. 988 F.3d at 1208. Defendants' counter-example, a forty-year-old Second Circuit opinion, is thus unpersuasive. *See Arkwright-Bos. Mfrs.*, 762 F.2d at 211.[2]

Defendants' argument is not supported by their citation to *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966 (9th Cir. 2011). The Court explained that "[w]e have held that the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal." *Id.* at 982 (cleaned up; citation omitted). The Court then noted that even the parties opposing a *Colorado River* stay "concede that the Removed Action will resolve all issues raised in the Federal Action." *Id.* As the Court explained, those parties only argued that "the district court erred by considering the Removed Action because the action was not in state court at the time of the district court's decision. We disagree." *Id.* Here, Defendants do not and cannot demonstrate that the *Adams* case necessarily will resolve this action.

In sum, Plaintiff readily admits that both the *Adams* case and this case will litigate some of the same issues: the outcome of both actions will rest on complex assessments of Mr. Soelberg's interaction with Defendants' product and Mr. Soelberg's past behavior. Portions of each case will undoubtedly be duplicative. But "some duplication of judicial efforts," are the "unavoidable price of preserving access to . . . federal relief." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991). Defendants can point to no "exceptional circumstance" previously identified by any court in the Ninth Circuit that would merit dismissal or a stay.

**3. Although California obtained jurisdiction two weeks earlier, litigation in federal court is currently scheduled to proceed first.**

Under the fourth factor, courts consider the order in which the [state and federal] forums obtained jurisdiction. *Bock*, 76 F.4th at 837. In doing so, "district courts are instructed not simply

[2] *See Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997) ("Whatever its inherent persuasiveness, *Arkwright–Boston* is distinguishable from this case. Although a few dozen people were injured by the deck collapse, this is hardly a mass tort situation with hundreds of claims and parties. It thus presents a far less compelling argument for abstention than was present in *Arkwright–Boston*. [¶] We are also skeptical of *Arkwright–Boston*'s rationale, at least as applied to the straightforward state negligence law issues involved here. Although it is possible that some case could involve a skein of state law so intricate and unsettled that resolution in the state courts might be more appropriate, traditional negligence law does not fit that description.").

to compare filing dates, but to analyze the progress made in each case 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Seneca*, 862 F.3d at 843 (quoting *Moses H. Cone*, 460 U.S. at 21). This factor is not relevant, because Defendants have failed to show that the *Adams* case will resolve all issues in this case.

In any event, the *Adams* case has not substantively progressed farther than this case despite being filed two weeks earlier, and thus this factor is neutral. In *Seneca*, the court held that when "neither court had resolved any foundational legal claims," even if there was "significant activity in each case", this factor could not weigh in favor of dismissal or a stay. 862 F.3d at 843. Similarly in *Travelers Indem. Co. v. Madonna*, the court held the factor to be neutral when the federal and state action were filed a few days apart. 914 F.2d 1364, 1370 (9th Cir. 1990). The cases that weighed this factor heavily identified state proceedings in which many of the legal issues had already been decided. *See, e.g., R.R. St.*, 656 F.3d at 980; *Bock*, 76 F.4th at 838; *Montanore Mins.*, 867 F.3d at 1168.

The *Adams* case was filed only two weeks before this one. The only progress that the state court has made was to coordinate the cases.[3] ECF No. 22 at 21. Based on the current court calendars, this action is set to have its case management conference nearly three months before the state court action. *Id*. This factor should therefore weigh against dismissal or a stay.

**4. Plaintiff's choice of a federal forum was not improper.**

Courts must also consider whether "either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca*, 862 F.3d at 846. However, it does not constitute forum shopping where a party "acted within his rights in filing a suit in the forum of his choice," *Travelers*, 914 F.2d at 1371, even when [t]he chronology of events suggests that both parties took a somewhat opportunistic approach to th[e] litigation," *R.R. Street*, 656 F.3d at 981.

Defendants argue that Plaintiff in this case has engaged in forum shopping in order to avoid coordinated state proceedings. Defendants' argument is nonsensical. Defendants argue that the

[3] Defendants argue that because some discovery proceeded in one of the *other* coordinated cases before the coordination order was issued, the state case should be considered further along. This argument is entirely unavailing. No discovery has progressed in *Adams*, the state case at issue here.

plaintiffs in this case and the *Adams* case are the same, yet the *Adams* plaintiff clearly found a coordinated proceeding unobjectionable: they filed their case in state court with full knowledge that a Petition for Coordination had been filed a month earlier. Either the *Adams* plaintiff and this plaintiff are the same, and there was no forum shopping, or the two plaintiffs are different, and the cases are not parallel.

Even in the latter case, Defendants provide no evidence that Plaintiff did not "merely act[] within [its] rights in filing a suit in the forum of [its] choice." *Travelers*, 914 F.2d at 1371. Nothing suggests that Plaintiff "sought to manipulate the litigation or behaved vexatiously." *Mendocino Ry.*, 113 F.4th at 1190 (quoting *Seneca*, 862 F.3d at 846).

**5. This is not a rare circumstance in which the use of state law is relevant to this analysis.**

Defendants argue that the fact that state law controls in this case favors their motion. It does not. "The fact that state law provides the rule of decision on the merits in a case may favor a stay, but 'only when the state law questions are themselves complex and difficult issues better resolved by a state court.'" *Montanore Mins.*, 867 F.3d at 1168 (quoting *Seneca*, 862 F.3d at 844). The Supreme Court has clarified that these circumstances are "rare." *Moses H. Cone*, 460 U.S. at 26.

The issues in dispute in this case are not "rare" or "complex." This case involves the application of routine product liability and consumer protection law, albeit to a new piece of technology. The "novel" legal issues raised by Defendants – whether a digital service can be considered a product, for example – are regularly and competently evaluated by federal courts, especially those in the Northern District of California. *See, e.g., Bogard v. TikTok Inc.*, No. 24-CV-03131-VKD, 2025 WL 604972, at *7 (N.D. Cal. Feb. 24, 2025) (evaluating product liability claims against TikTok, Inc.); *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. MDL 3084 CRB, 2024 WL 4211217, at *22 (N.D. Cal. Aug. 15, 2024) (evaluating product liability claims against Uber).

**C. Plaintiff Has Cured Any Defect Under California Code of Civil Procedure § 377.32.**

Although Plaintiff did not initially file a declaration pursuant to California Code of Civil Procedure § 377.32, it has done so now and thus has standing to assert its complaint. It is well

supported in the Ninth Circuit that a plaintiff may file a declaration after filing its complaint, and that once filed the declaration relates back to the complaint, curing any standing issues.

Under Section 377.32(a) of the California Code of Civil Procedure, a "person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest under this article, shall execute and file an affidavit or a declaration under penalty of perjury under the laws of this state" with numerous specific requirements. A plaintiff filing a survival action filed under California law without this declaration does not have standing to sue. *Hayes v. Cnty. of San Diego*, No. 07CV1738 DMS (JMA), 2014 WL 11878351, at *2 (S.D. Cal. Apr. 3, 2014)

However, "[w]hile a successor in interest must file an affidavit or declaration to establish standing, Section 377.32 'does not set a timeframe for the filing of the successor in interest affidavit or declaration.'" *Est. of Adams v. Cnty. of San Bernardino*, No. EDCV 24-1447-KK-SHKX, 2024 WL 5413155, at *3 (C.D. Cal. Nov. 26, 2024) (quoting *Vargas v. California*, No. 3:23-CV-01893-RBM-SBC, 2024 WL 3297487, at *5 (S.D. Cal. July 3, 2024)). As such, courts assessing motions to dismiss based on the failure to file a declaration have simply ordered the plaintiff to cure the defect by submitting one within a certain time period. *Est. of Adams*, 2024 WL 5413155, at *3; *see also Est. of Merlin Factor v. Cnty. of San Bernardino*, Case No. EDCV-14-01289-DMG-AGRx, 2015 WL 13916251, at *4 (C.D. Cal. Apr. 8, 2015). Here, Plaintiff has already done so: the declaration has been filed with this brief. *See* Declaration of Emily Lyons filed concurrently herewith.

Once a plaintiff has filed the declaration, it relates back to the original complaint, curing any error. In *Hayes*, as here,

> Plaintiff clearly alleged in the original Complaint the same claim she alleges now . . . The only difference between the claims is Plaintiff has now submitted the requisite declaration under California Code of Civil Procedure § 337.32. Under these circumstances, Defendants cannot, and indeed they do not, claim they have been prejudiced by Plaintiff's belated filing of the Declarations. Plaintiff has met the requirements of Rule 15(c)(1)(B), and thus her claim, as amended by the Declarations, relates back to the original Complaint.

*Hayes*, 2014 WL 11878351, at *3.

In *Kirby*, relied on by Defendants, the court dismissed the case because when the defendants pointed out that the plaintiff had not filed a Section 377.32 declaration, the plaintiff chose not to correct the defect, but instead responded that it was not required to file such a declaration. *Kirby v. AT&T Corp.*, No. 321CV01680BENBGS, 2022 WL 1227993, at *1 (S.D. Cal. Apr. 26, 2022). This case is an outlier in that most courts have given plaintiffs the opportunity to cure their defect. *See, e.g.*, *Est. of Adams*, 2024 WL 5413155, at *3; *Est. of Merlin Factor*, 2015 WL 13916251, at *4. However, even if this Court agrees with *Kirby*, this case is distinct in that Plaintiff has since provided the declaration. *See* Declaration of Emily Lyons filed concurrently herewith.

In the other cases cited by Defendants that address Section 377.32[4], the courts did not dismiss a complaint for failure to file a declaration, nor did they hold that a dismissal was required. In *King*, the plaintiff complied with the requirements of Section 377.32, and the court dismissed the complaint on entirely different grounds. *King v. United States*, No. 515CV00753CASDTBX, 2016 WL 146424, at *6 (C.D. Cal. Jan. 11, 2016). In *Garcia v. Adams*, the complaint was dismissed because the plaintiff *failed to allege* facts addressing the information required under Section 377.32. No. F 04-5999 AWI SMS, 2006 WL 403838, at *12 (E.D. Cal. Feb. 17, 2006). Plaintiff's complaint does make these allegations. ECF No. 1 at 5 ("On October 14, 2025, through Letters of Administration, Emily Lyons was appointed Administrator c.t.a. and Personal Representative of the Estate of Stein-Erik Soelberg").

## V. CONCLUSION

This Court should deny Defendants' motion to dismiss the complaint under either *Colorado River* doctrine or Section 377.32. The exceptional circumstances required by the former are not present here because the state court action does not fully resolve the issues in this case. The latter is not grounds for dismissal, and even if it were, Plaintiff has since cured the defect by filing the required declaration.

[4] Defendants also cite Delaware and Hawaii laws, which are not relevant here. *See* ECF No. 22 at 24.

DATED: March 24, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By */s/ Elizabeth "Ani" Lubben Zotti*
Elizabeth "Ani" Lubben Zotti (*pro hac vice*)
Shana E. Scarlett (SBN 217895)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Email: ani.zotti@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice* to be applied for)
Jacob Berman (SBN 32717)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
jakeb@hbsslaw.com

*Attorneys for Plaintiff*