EDWARD D. JOHNSON (SBN 189475)
WJohnson@mayerbrown.com
ANTHONY J WEIBELL (SBN 238850)
AWeibell@mayerbrown.com
KRISTIN W. SILVERMAN (SBN 341952)
KSilverman@mayerbrown.com
ELSPETH V. HANSEN (SBN 292193)
EHansen@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California  94306
Tel.:        (650) 331-2000
Fax:        (650) 331-2060

ANKUR MANDHANIA (SBN 302373)
AMandhania@mayerbrown.com
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA  94105
Tel.:        (415) 874-4230
Fax:        (415) 331-2060

[additional counsel listed on signature page]

Attorneys for Defendants
OPENAI FOUNDATION, OPENAI OPCO, LLC,
OPENAI HOLDINGS, LLC, OPENAI GROUP PBC,
and SAMUEL ALTMAN

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EMILY LYONS, Administrator c.t.a and Personal Representative of the ESTATE OF STEIN-ERIK SOELBERG,<br><br>Plaintiff,<br><br>vs.<br><br>OPENAI FOUNDATION (F/K/A OPENAI INC.), *et al.*,<br><br>Defendants. | Case No. 3:25-cv-11037-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**<br><br>Judge: Hon. Richard Seeborg<br><br>Hearing Date: April 16, 2026<br><br>Hearing Time: 1:30 p.m.<br><br>Location: Courtroom 12, 450 Golden Gate Avenue, San Francisco, California 94102 |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

DISCUSSION ...................................................................................................................... 2

A.  The *Adams* and *Lyons* Actions Satisfy The Parallel Lawsuit Requirement............................ 2

    1.  The Actions Turn On The Same Facts And Assert Identical Legal Claims. ........... 2

    2.  The "Substantial Similarity" Between This Case And *Adams* Easily Satisfies The Ninth Circuit Standard For Abstention. ........................................................... 3

    3.  Plaintiff's Cases Do Not Support Her Assertion That Any Distinction Between The State And Federal Actions Precludes Abstention. ............................. 6

B.  Abstention Will Avoid Piecemeal Litigation. ......................................................... 9

C.  The State Forum Obtained Jurisdiction First. ....................................................... 11

D.  The Cases Present Novel Issues Of State Law....................................................... 12

E.  Plaintiff Offers No Reason Why Federal Court Is The Better Forum. ................................. 13

CONCLUSION .................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance of Am. Insurers*, 854 F.2d 591 (2d Cir. 1988) .................................................................... 5

*Applied Materials, Inc. v. Demaray LLC*,
760 F. Supp. 3d 965 (N.D. Cal. 2024) ..................................................................... 8

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
762 F.2d 205 (2d Cir. 1985) .................................................................... 12

*Bernstein v. Hosiery Mfg. Corp.*,
850 F. Supp. 176 (E.D.N.Y. 1994) ..................................................................... 5

*Black Sea Inv., Ltd. v. United Heritage Corp.*,
204 F.3d 647 (5th Cir. 2000) ..................................................................... 11

*Brito v. New United Motor Mfg.*,
2007 WL 1345197 (N.D. Cal. May 8, 2007) ..................................................................... 3, 9

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ..................................................................... 1, 2, 3, 4, 5, 6, 8, 9, 10, 11

*Driftless Area Land Conservancy v. Valcq*,
16 F.4th 508 (7th Cir. 2021) ..................................................................... 11

*Ernest Bock, LLC v. Steelman*,
76 F.4th 827 (9th Cir. 2023) ..................................................................... 6, 7, 11, 12

*Forest v. Gas Co.*,
2008 WL 4657833 (D. Haw. Oct. 20, 2008) ..................................................................... 8

*GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co.*,
99 F.4th 424 (7th Cir. 2024) ..................................................................... 4, 5

*Intel Corp. v. Advanced Micro Devices, Inc.*,
12 F.3d 908 (9th Cir. 1993) ..................................................................... 7

*Jackson v. Marten Transp., Ltd.*,
2025 WL 342083 (C.D. Cal. Jan. 30, 2025) ..................................................................... 10

*Mendocino Ry. v. Ainsworth*,
113 F.4th 1181 (9th Cir. 2024) ..................................................................... 3, 7

*Montanore Mins. Corp. v. Bakie*,
867 F.3d 1160 (9th Cir. 2017) ..................................................................... 3, 4, 6, 7, 12, 13

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989)............................................................................. 3, 4, 6, 7, 8

*R.R. Street & Co. v. Transport Ins. Co.*,
   656 F.3d 966 (9th Cir. 2011)..................................................................................... 3, 10, 12

*Seneca Ins. Co. v. Strange Land, Inc.*,
   862 F.3d 835 (9th Cir. 2017)..................................................................................... 9, 11, 12

*Steen v. John Hancock Mut. Life Ins.*,
   106 F.3d 904 (9th Cir. 1997)............................................................................................. 8

*Taveras v. Bank of Am.*,
   89 F.4th 1279 (11th Cir. 2024) ..................................................................................... 5, 9

*Tovar v. City of San Jose*,
   2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) .......................................................... 13

*Travelers Indem. Co. v Madonna*,
   914 F.2d 1364 (9th Cir. 1990)........................................................................................ 12

*United States v. State Water Resource Control Bd.*,
   988 F.3d 1194 (9th Cir. 2021)............................................................................. 10, 11, 12

*Wash. Mut. Inc. v. United States*,
   636 F.3d 1207 (9th Cir. 2011)......................................................................................... 8

**Statutes**

California Code of Civil Procedure § 377.32.................................................................... 2

**INTRODUCTION**

Plaintiff's Opposition (ECF No. 39, "Opp.") fails to overcome the many commonsense reasons why the efficient administration of justice and judicial comity warrant abstention here. Instead, Plaintiff urges the Court to adopt a legal standard that this Circuit already has rejected, insisting that *Colorado River* abstention is permissible only when the state and federal cases at issue are perfectly identical. But the Ninth Circuit has *squarely held* that abstention is proper when the cases are "substantially similar," even where the state court action will not resolve all possible issues before the federal court.

This parallel proceeding is exactly the "exceptional" case that calls for *Colorado River* abstention. Here, *Adams*, the earlier-filed state case (1) is brought on behalf of the same real parties in interest; (2) involves the same violent incident (a murder-suicide), the same individual causing that violence (Soelberg), the same allegations that delusions caused Soelberg to commit that murder-suicide, and the same allegations that ChatGPT-4o allegedly caused those delusions; (3) requires an examination of the very same evidence (*e.g.*, Soelberg's ChatGPT transcript, Soelberg's longstanding history of self-harm and violence,[1] and documents and testimony regarding the development and design of ChatGPT-4o); and (4) seeks recovery for those entirely overlapping allegations based on the same state-law liability theories raising novel questions of state law. Plaintiff does not—and cannot—overcome these common-sense reasons for abstention.

Plaintiff also ignores the reality that *Adams* is one of over a dozen analogous Related Actions, most filed before this one, pending against Defendants in a coordinated state-court proceeding. Under Ninth Circuit precedent, the potential for inconsistent rulings with coordinated state proceedings involving the same claims and facts dictates that those first-filed state court proceedings should advance first.

---

[1] Public records demonstrate Soelberg's well documented history of mental illness and violent behavior that long predated his use of ChatGPT. *See* Defendants' Motion to Dismiss, ECF No. 22 ("Mot."), at 6 n.2.

# DISCUSSION

**A.      The *Adams* and *Lyons* Actions Satisfy The Parallel Lawsuit Requirement.**

**1.      The Actions Turn On The Same Facts And Assert Identical Legal Claims.**

The Opposition claims that OpenAI did not "address, let alone demonstrate" that the parallelism factor is satisfied here.  Opp. 4.  Not so.  OpenAI explained in its opening brief (at 9-12) that the parallelism factor of the *Colorado River* analysis is easily satisfied because these cases are not merely "substantially similar"—they are nearly identical.  Plaintiff does not dispute these similarities:

- Both cases are brought by the same apparent real parties in interest—Soelberg's two adult children, who are the heirs to both the Adams estate and the Soelberg estate.  Opp. 8.[2]

- Both cases assert the same seven causes of action: (1) strict liability for design defect; (2) strict liability for failure to warn; (3) negligence for design defect; (4) negligence for failure to warn; (5) violation of California's Unfair Competition Law; (6) wrongful death; and (7) survival action.  Opp. 2.

- Both cases arise from the same tragic episode: Stein-Erik Soelberg's murder-suicide on August 5, 2025.  *Id.*

- Both complaints make the same allegations that ChatGPT-4o's design was defective; that OpenAI failed to provide adequate safety warnings; that ChatGPT reinforced Soelberg's paranoid delusions; and that Soelberg's interactions with ChatGPT were a substantial factor in causing him to commit violence.  Opp. 2.

- Both complaints seek virtually identical comprehensive injunctive relief.[3]

[2] The Opposition suggests uncertainty regarding whether the two cases are brought by the same real parties in interest.  Opp. 8.  But the affidavit Plaintiff belatedly filed alongside her opposition identifies Greenwich Probate Court case number 25-00405 as the case in which she was appointed administrator of Soelberg's estate.  ECF No. 39-2.  The records of that case show that the beneficiaries of the estate on whose behalf Plaintiff brings this case are the same as the beneficiaries of the Adams estate.  *See* ECF No. 22-1, ¶ 4.  Given Plaintiff's correction of her acknowledged failure to comply with section 377.32 of the California Code of Civil Procedure upon filing her complaint, Opp. 12, it is no longer necessary to dismiss the complaint on that basis.  However, the information confirmed by Plaintiff's belated compliance further underscores that the case should be dismissed on *Colorado River* grounds because it illustrates that the parties in interest in both cases are the same.

[3] Plaintiff asserts that *Adams* is distinct because "the *Adams* suit is focused on harms caused to third parties" on account of the injunctive relief that it seeks.  Opp. 2.  Her complaint says the opposite: as in *Adams*, Plaintiff here seeks injunctive relief to "benefit the general public by protecting all users and the people around them from similar harm."  Compl., ECF No. 1, ¶ 137.

2

Nonetheless, Plaintiff insists these suits are not parallel because "the plaintiff in this case raises one additional causation question not expressly presented in *Adams*—whether ChatGPT was . . . a substantial factor in causing Soelberg's suicide." Opp. 7. That ignores the practical reality that both inextricably linked acts of violence (the murder and the suicide) were allegedly committed by the same person (Soelberg) and resulted from the same cause (ChatGPT interactions that allegedly caused Soelberg's psychosis). It further ignores that both cases assert identical legal claims.

**2. The "Substantial Similarity" Between This Case And *Adams* Easily Satisfies The Ninth Circuit Standard For Abstention.**

The Ninth Circuit repeatedly has held that "[e]xact parallelism . . . is not required" for *Colorado River* abstention. *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1190 (9th Cir. 2024). "It is enough if the two proceedings are substantially similar." *Id.* at 1190-91; *see also Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1170 (9th Cir. 2017) (same); *R.R. Street & Co. v. Transport Ins. Co.*, 656 F.3d 966, 982 (9th Cir. 2011) (same); *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (same). And "[c]ourts of this district have held state and federal proceedings to be 'substantially similar' when they arise out of the same alleged conduct, and when they involve substantially the same parties and are premised on the same interactions between the parties." *Brito v. New United Motor Mfg.*, 2007 WL 1345197, at *3 (N.D. Cal. May 8, 2007) (collecting cases).

Indeed, suits can be parallel under *Colorado River* even where "the federal suit include[s] additional claims, and the suits arguably focus on different aspects of the [underlying] dispute." *Montanore*, 867 F.3d at 1170 (citing *Nakash*, 882 F.2d at 1416-17). The Ninth Circuit has applied *Colorado River* abstention even when the federal case involved additional issues that would not be resolved by the parallel state court proceeding.

In *Nakash*, two families—the Nakashes and the Marcianos—were locked in a dispute over their jointly owned company. 882 F.2d at 1412-13. The Marcianos filed suit in California state court alleging various causes of action against the Nakashes. The Nakashes then filed their own federal court action, asserting claims for breach of contract, breach of fiduciary duty, and RICO

violations against the Marcianos. The Nakashes' RICO claims were not part of the state action and would not have been resolved by the state court regardless of how that case was decided. *See id.* The Nakashes argued that the suits were therefore not parallel because the RICO claims were not involved in the state action. *Id.* at 1416.

The Ninth Circuit "agree[d] that exact parallelism does not exist," but nevertheless upheld *Colorado River* abstention because exact parallelism "is not required. It is enough if the two proceedings are substantially similar." *Id.* The court found the cases substantially similar because "[a]ll of these disputes concern how the respective parties have conducted themselves since Nakash purchased a portion of [the jointly owned company]," and held that courts "should be particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." *Id.* at 1417.

The Ninth Circuit reached the same conclusion in *Montanore*, reversing a district court decision denying *Colorado River* abstention. 867 F.3d at 1163-64. There, a mining company challenged the validity of the defendants' unpatented mining claims in Montana state court, while simultaneously seeking in federal court to condemn public easements through those claims for public use—which, the court of appeals recognized, was "not . . . precisely the same issue." *Id.* at 1167. The district court rested its decision entirely on its conclusion that the cases were insufficiently parallel, holding that "parallelism did not exist because there was no parallel state court proceeding adjudicating the merits of a condemnation order with respect to the easements and rights of way at issue." *Id.* at 1170. The Ninth Circuit reversed, reasoning that courts "do not require such exact parallelism," and ordered the district court to enter a stay pursuant to *Colorado River*. *Id.*

Other circuits have reached the same conclusion when applying the pragmatic *Colorado River* factors—like the Ninth Circuit, they focus on practical realities, not formalism, in deciding whether the state and federal actions are sufficiently parallel.

In *GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co.*, 99 F.4th 424 (7th Cir. 2024), the Seventh Circuit affirmed a *Colorado River* stay in a dispute between the owners of a cosmetics

4

company, *id.* at 430-31. One co-owner filed a state court action against the other co-owners alleging that they had fraudulently taken control of the company and misappropriated its assets. *Id.* at 426-27. The company itself then filed a separate federal court action bringing trade secret misappropriation claims against largely the same individuals, plus additional defendant entities. The cases arose from "the same set of facts" but were brought by different plaintiffs, named partially different defendants, and asserted different claims. *Id.* at 427, 429. And there was a clear possibility that the state case would not resolve the federal action: if the state court found that the defendants did not own the company, there would "be more work for the federal court to do" because the trade secret claims would remain unresolved. *Id.* at 429.

The Seventh Circuit held that none of this defeated parallelism, explaining that "[p]recise[] formal symmetry is unnecessary" and that cases are parallel so long as they involve "substantially the same parties" with "nearly identical interests" litigating "substantially the same issues." *Id.* (internal quotation marks and citations omitted).

The Eleventh Circuit reached a similar result in *Taveras v. Bank of America*, 89 F.4th 1279, 1286 (11th Cir. 2024). In *Taveras*, homeowners were defending against a state court foreclosure action, in which the central issue was whether a promissory note on their property was valid and enforceable. *Id.* at 1283. The homeowners then filed a federal action arising from the same dispute, alleging that the note had been fraudulently manufactured and asserting claims for RICO violations and fraud that were not part of the state case. *Id.* at 1284. The court affirmed a *Colorado River* stay, holding that the cases were substantially similar because "the claims in both the federal and state cases depend upon the validity of the Note and the existence of a lien on the property," even though the state case would not necessarily resolve the federal RICO and fraud claims. *Id.* at 1286 ("The issues and parties do not have to be identical to be substantially similar; if the standard required identical issues and parties, a party could easily circumvent abstention with creative pleading."); *see also Bernstein v. Hosiery Mfg. Corp.*, 850 F. Supp. 176, 184 (E.D.N.Y. 1994) ("The fact that precisely the same claims are not made in the two proceedings, or that alternative forms of relief are sought in the two actions does not mean the actions are not duplicative or parallel.

*What matters is that the claims concern the same events and involve 'sufficient overlap of subject matter.'"* (quoting *Alliance of Am. Insurers*, 854 F.2d 591, 603 (2d Cir. 1988) (emphasis added)).

The *Lyons* and *Adams* actions—like each of the cases discussed above—involve substantially the same parties litigating substantially the same issues. Both depend on the same core allegations (i) about the development and design of ChatGPT-4o and (ii) that ChatGPT-4o allegedly contributed to the same violent episode by Soelberg. The fact that this federal action could *potentially* present an additional causation issue beyond those core disputes is not a basis for denying *Colorado River* abstention.

### 3. Plaintiff's Cases Do Not Support Her Assertion That Any Distinction Between The State And Federal Actions Precludes Abstention.

Plaintiff's attempt to avoid the settled principle that "substantial similarity" is sufficient to permit abstention rests (Opp. 6) on *Ernest Bock, LLC v. Steelman*, 76 F.4th 827 (9th Cir. 2023). But that case actually recognizes this Circuit's adoption of the substantial similarity principle.

*Ernest Bock* expressly acknowledged that the Ninth Circuit had "affirmed a *Colorado River* stay after implicitly recognizing that the state court proceedings might not fully resolve the federal case." 76 F.4th at 839 (citing *Nakash*, 882 F.2d at 1412; *Montanore*, 867 F.3d at 1170). That principle did not support abstention in *Ernest Bock* because the state and federal actions there involved different claims, different parties, and different conduct, and therefore were not anywhere close to substantially similar.

The state court lawsuit was a breach-of-contract action in which a lender sought to enforce personal guarantees that the defendants had signed for a construction loan. *See Ernest Block*, 76 F.4th at 832-33. The federal case alleged entirely different wrongdoing—that the defendants had dispersed their assets through a complicated web of trusts and shell entities to shield their wealth from creditors, giving rise to claims for fraudulent transfer, fraud, and racketeering—and named numerous additional defendants (including trusts, shell entities, and family members). *Id.* The two cases shared only the question of whether the guarantees were enforceable, but the federal claims otherwise required a wholly separate inquiry into different conduct and legal theories.

*Ernest Bock* did not hold that the presence of a single additional issue automatically defeats parallelism between state and federal cases that are otherwise substantially similar (and here, virtually identical). Indeed, the Ninth Circuit has since confirmed that "*Ernest Bock* did not abrogate [the court's] prior precedent" in *Nakash* and *Montanore*. *Mendocino Ry.*, 113 F.4th at 1192. Instead, *Ernest Bock* holds that cases involving substantially *different* alleged wrongdoing are not parallel.

Here, both *Adams* and this case are brought by the same apparent real parties in interest who assert that the same allegedly improper design decisions made by the same Defendants allegedly gave rise to the same delusions in the same individual who engaged in a single violent episode. Those parallel contentions and parallel claims are precisely what the court of appeals found lacking in *Ernest Bock*, which makes that decision wholly inapposite here.

Nor does Plaintiff help her argument by invoking *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908 (9th Cir. 1993). Like *Ernest Bock*, the state and federal lawsuits in *Intel* did not involve the same claims: the federal case was a copyright infringement action and the state action concerned judicial review of an arbitration award arising from a separate contract dispute. *Id.* at 910-11. The only connection between the two was that the arbitrator, in resolving the contract dispute, had awarded AMD a license under Intel's copyrights as an equitable remedy—a license that, if upheld, would have provided a defense to the federal copyright claims. *Id.* at 911-12.

Plaintiff seizes on the Ninth Circuit's observation that the state court proceedings would resolve the federal action "*only* if the arbitration award is confirmed and if the state court's resolution of the copyright challenge to the award is deemed to have collateral estoppel effect in federal court." *Intel*, 12 F.3d at 913. But that observation reflected the unique circumstances of *Intel*, in which the only bridge between the otherwise distinct proceedings was the potential preclusive effect of the arbitrator's remedy. *Intel* did not hold that collateral estoppel is a prerequisite for parallelism, and its discussion of preclusion says nothing about cases like this one, where the proceedings involve the same claims and the same operative facts, and where the relationship between the two actions is apparent on the face of the complaints without resort to

preclusion. Consistent with that understanding, no Ninth Circuit case before or after *Intel* has treated collateral estoppel as part of the parallelism analysis. In both *Nakash* and *Montanore*, the Ninth Circuit held the cases were substantially similar without determining that the state court findings would have had collateral estoppel effect in the federal action; indeed, neither decision so much as mentioned collateral estoppel.[4]

Tellingly, Plaintiff has little to say about the district court case most analogous to this one: *Forest v. Gas Co.*, 2008 WL 4657833 (D. Haw. Oct. 20, 2008). In *Forest*, a car accident killed three members of a family and critically injured a fourth—the surviving child. The surviving child's guardian filed a negligence action in state court on behalf of the surviving child, and then filed a separate federal action on behalf of the deceased child's estate, asserting the same negligence claim, against the same defendant, arising from the same accident. *Id.* at *1. The court granted a *Colorado River* stay, holding that the cases were sufficiently parallel even though they were nominally brought on behalf of different plaintiffs. *Id.* at *3-4. Plaintiff's only response is to assert that *Forest* applied the wrong standard. Opp. 8 n.1. It did not. The court applied the standard the Ninth Circuit repeatedly has reaffirmed: that the cases need not be identical, only "substantially similar." *Id.* at *4-5 (quoting *Nakash*, 882 F.2d at 1416).

Perhaps recognizing that cases can be parallel under *Colorado River* even when they are not identical, Plaintiff contends that "where the Ninth Circuit has deemed two cases to be parallel despite asserting slightly different claims, the two suits were generally clear mirrors of each other." Opp. 7. But *Adams* and this case *are* clear mirrors of each other: Both cases allege that the same person's use of the same generative AI service caused him to experience the same delusions, leading to violence on the same day. The only differences between them are the identity of the

---

[4] In any event, the state court proceedings in *Adams* likely would have preclusive effect against Plaintiff here. Collateral estoppel applies "not only against actual parties to prior litigation, but also against a party that is in privity to a party in previous litigation." *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011) (quoting *Steen v. John Hancock Mut. Life Ins.*, 106 F.3d 904, 910 (9th Cir. 1997)). And "privity may exist . . . when there is sufficient commonality of interest between the parties." *Applied Materials, Inc. v. Demaray LLC*, 760 F. Supp. 3d 965, 971 (N.D. Cal. 2024).

victim of that violence—Mr. Soelberg's mother, or himself—and the brief period between when Mr. Soelberg killed his mother and when he took his own life.

That does not make these suits any less parallel. In the state court case, the court will determine causation by evaluating Soelberg's mental health history, the content of his interactions with ChatGPT-4o, the nature of the delusions ChatGPT allegedly validated, and the connection between those interactions and his violent conduct. And the federal causation question (applying California law) will depend on the same evidence. Whether ChatGPT-4o's alleged defects caused Soelberg to engage in that violence is one question, not two. That means these cases are "substantially similar"—they "arise out of the same alleged conduct," "involve substantially the same parties," and "are premised on the same interactions between the parties." *Brito*, 2007 WL 1345197, at *3. To hold otherwise would allow a party to "easily circumvent abstention with creative pleading," *Taveras*, 89 F.4th at 1286, which is precisely what Plaintiff is attempting to do here by filing her action in federal court to circumvent the coordinated state proceedings involving the same claims, facts, and real parties in interest.

**B.      Abstention Will Avoid Piecemeal Litigation.**

Plaintiff does not dispute that the next *Colorado River* factor—the substantial potential for piecemeal litigation—strongly favors abstention. In fact, "Plaintiff readily admits that both the *Adams* case and this case will litigate some of the same issues" and that "[p]ortions of each case will undoubtedly be duplicative." Opp. 10.

That is a huge understatement. As Defendants explained above and in the opening brief, both cases turn on the same core factual and legal questions. Mot. 14-15. If both cases proceed, two courts will be required to resolve the very same questions—carrying a clear attendant risk of inconsistent results. Moreover, both complaints also seek virtually identical comprehensive injunctive relief, and even a small variation in how two courts might define terms such as "appropriate safeguards" and "comprehensive safety warnings" would create inconsistent obligations for OpenAI. *Id.* at 15.

The potential for inconsistent rulings here is "particularly problematic" given that *Adams* is part of a broader coordinated state court proceeding addressing the same issues. *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 843 (9th Cir. 2017). This Court's rulings would have the potential to conflict not only with the *Adams* action but also with the more than a dozen other coordinated cases raising the same core questions about ChatGPT-4o.

The Ninth Circuit has recognized that avoidance of piecemeal litigation "weighs significantly against jurisdiction" when the state court has "consolidated multiple cases to create a comprehensive scheme" for resolving related claims. *R.R. Street*, 656 F.3d at 979-80. That is precisely the situation here: the Judicial Council has coordinated a dozen related actions, a coordination trial judge has been assigned, and a case management conference is set for July 2026.

Plaintiff argues that *United States v. State Water Resource Control Board*, 988 F.3d 1194 (9th Cir. 2021), holds that the presence of coordinated cases in state court has no bearing on the abstention question, but she ignores that the court there relied on critical facts not present here. *See* Opp. 9-10. For example, the state court action relevant for the abstention question in *State Water Resource Control Board* was not one of the cases which the state court had coordinated. 988 F.3d at 1200-01. In other words, *State Water Resource Control Board* says that coordinated proceedings are irrelevant for *Colorado River* analysis when the state court case identified as parallel is not part of those coordinated proceedings. It says nothing about the situation here, where *Adams is* part of the coordinated state proceedings.

In addition, the federal case at issue in *State Water Resource Control Board* involved a unique federal claim not raised in the state case. *Id.* at 1207. Here, the claims raised in both cases are the same—and all arise under state law. Thus, the case does not in any way undercut Defendants' arguments for abstention on the facts present here.

Plaintiff also does not dispute that this case would involve the exact same discovery as the state court proceedings. *See* Mot. 14. *Adams* and all of the other actions in the coordinated state proceeding advance the same core legal claims and theories of liability against OpenAI as this case, and the plaintiffs in these cases therefore are likely to seek largely the same discovery from OpenAI.

Requiring Defendants to respond to and negotiate extensive discovery in this single federal action—while doing the same thing in the coordinated state proceedings—would create unnecessary and wasteful duplication. *See Jackson v. Marten Transp., Ltd.*, 2025 WL 342083, at *5 (C.D. Cal. Jan. 30, 2025) (*Colorado River* abstention warranted where "the parties would [otherwise] engage in duplicative discovery and fact-finding efforts").

Unable to come up with any common-sense or practical objection to abstention, Plaintiff invokes Ninth Circuit decisions holding that piecemeal litigation would not *by itself* warrant abstention where the state and federal cases did not satisfy the parallelism factor. *See* Opp. 8-9 (citing *Seneca*, 862 F.3d at 842-43; *Ernest Bock*, 76 F.4th at 837 & n.14; *State Water Res. Control Bd.,* 988 F.3d at 1208). But that is not the case here. As discussed, parallelism is satisfied because substantially the same parties are litigating substantially the same issues arising from substantially the same facts.

It does not make any practical sense for this single (and duplicative) litigation to march ahead in federal court while the Related Actions proceed in state court based on the very same evidence and overlapping allegations of law and fact. The most efficient and appropriate approach for the fair administration of justice is to dismiss or stay this action so that the coordinated state proceedings may proceed. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (principles of *Colorado River* doctrine "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" (alterations and quotations omitted)); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 528 (7th Cir. 2021) ("The *Colorado River* abstention doctrine is based on principles of federalism, comity, and conservation of judicial resources." (quoting *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000))). The piecemeal litigation factor thus strongly favors dismissal.

**C.    The State Forum Obtained Jurisdiction First.**

Plaintiff concedes (Opp. 10) that the *Adams* court obtained jurisdiction first; this factor therefore weighs in favor of abstention. Despite her concession, Plaintiff says the "factor is neutral"

in this case. *Id.* at 11 (quotations omitted). That is wrong. The state courts have already invested significant resources to resolve the questions raised by this case. Thus, if this factor is addressed in the "pragmatic" way Plaintiff says it should, this factor favors abstention. *Id.*

As Plaintiff admits, *Adams* and eleven other cases are now subject to a coordination order in state court, and some of those cases were filed nearly four months before this case. Opp. 3, 11. For the reasons that Defendants have explained (Mot. 13), allowing this mirror-image case to proceed while the coordinated cases unfold risks "inconsistent disposition" and forces Defendants "to defend complex litigation on two fronts." *Id.* (quoting *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985)); *see supra* pp. 9-10.[5]

None of the authority on which Plaintiff relies involved a parallel state court action that was part of a coordinated proceeding; moreover, most of her citations involved litigation where the federal cases were filed first. *See Seneca*, 842 F.3d at 843 (one federal and one state court action where federal action was initiated first); *Travelers Indem. Co. v Madonna*, 914 F.2d 1364, 1366 (9th Cir. 1990) (single federal and state action); *RR. St.*, 656 F.3d at 980 (same); *Ernest Bock*, 76 F.4th at 838; *Montanore Mins.*, 867 F.3d at 1168 (same). These cases are thus inapplicable. Given the circumstances present here and the on-point authority cited in the Motion, this factor weighs in favor of abstention.

**D.     The Cases Present Novel Issues Of State Law.**

Plaintiff says that "the use of state law" is not "relevant to this analysis," and that "the issues in dispute in this case are not 'rare' or 'complex'" because they are premised on generic tort and products liability principles. Opp. 12. Plaintiff's position appears to be that any case where generic tort law principles apply—which is to say, any tort case—cannot possibly present "rare" or "complex" issues. Plaintiff is wrong.

The allegations at the core of this case, *Adams*, and the other Related Actions—involving ChatGPT, a new and novel technology—are plainly novel and complex. Indeed, the San Francisco

---

[5] Plaintiff takes issue with Defendants' reliance on *Arkwright-Boston* for its age, and says *State Water Resource Control Board* is a better fit. *See* Opp. 9-10. As explained above, *see supra* p. 10, Plaintiff's characterization of the latter case is simply wrong.

Superior Court already deemed *Adams* and the other Related Actions "complex." ECF No. 22-6 at 4. It reached that decision based on a petition for coordination filed by the plaintiffs in most of those cases arguing that the claims involve "complex and novel legal issues" "with scant controlling appellate authority," ECF No. 22-5 at 23; *see also id.* at 29 (highlighting "the complexity of the legal issues presented"). Plaintiff's own counsel has characterized this case as raising "critical questions about the responsibilities of AI companies to protect vulnerable users."[6] Plaintiff's Opposition provides no basis for disputing the state courts' conclusion that the state law questions raised here are novel, which favors allowing a state court to decide those questions in the first instance.

Finally, Plaintiff fails to even mention the novel issue at the heart of her UCL claim: whether California statutes regulating the practice of psychology (a practice itself governed by state law) apply to AI chatbots. Mot. 16. She offers no reason why such a difficult issue is not better resolved by the state court, *see Montanore Mins. Corp.*, 867 F.3d at 1168, and her silence on the issue constitutes waiver. *See Tovar v. City of San Jose*, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) ("By failing to respond to the [defendant's] arguments, Plaintiffs have conceded those arguments . . . .").

The novel and complex nature of the state law claims that the plaintiffs raise here and in *Adams* weighs heavily in favor of abstention.

**E.    Plaintiff Offers No Reason Why Federal Court Is The Better Forum.**

Last, Plaintiff's arguments disclaiming forum shopping make little sense. She says "[e]ither the *Adams* plaintiff and this plaintiff are the same, and there was no forum shopping, or the two plaintiffs are different, and the cases are not parallel." Opp. 12. But the real parties in interest in both *Adams* and *Lyons* are the same, *id.* at 8, and the decision to file this action in a federal forum allows them to hedge their bets by litigating one case in the coordinated state action and one outside of it. Mot. 17; Opp. 11-12. That is forum shopping, plain and simple.

---

[6] *Lawsuit Filed Against OpenAI Following Murder-Suicide in Connecticut*, Hagens Berman (Jan. 5, 2026), available at https://perma.cc/NR9Z-CE6R.

## CONCLUSION

The Court should dismiss the complaint or, at a minimum, stay this litigation pending resolution of the parallel *Adams* action in state court.

DATED:        March 31, 2026

By:  */s/ Edward D. Johnson*
EDWARD D. JOHNSON (SBN 189475)
ANTHONY J WEIBELL (SBN 238850)
KRISTIN W. SILVERMAN (SBN 341952)
ELSPETH V. HANSEN (SBN 292193)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306
Tel.:  (650) 331-2000
Fax:  (650) 331-2060

ANKUR MANDHANIA (SBN 302373)
AMandhania@mayerbrown.com
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA  94105
Tel.:  (415) 874-4230
Fax:  (415) 331-2060

ANDREW J. PINCUS (*pro hac vice*)
APincus@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
Tel.:        (202) 263-3000
Fax:  (202) 263-3300

GRAHAM WHITE (*pro hac vice*)
GWhite@mayerbrown.com
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York  10020
Tel.:        (212) 506-2500
Fax:  (212) 262-1910

MALORI MCGILL FERY (*pro hac vice*)
MMcGillFery@mayerbrown.com
MAYER BROWN LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84101
Tel.:  (801) 907-2700
Fax:  (801) 880-2221

Attorneys for Defendants
OPENAI FOUNDATION, OPENAI OPCO,
LLC, OPENAI HOLDINGS, LLC, OPENAI
GROUP PBC, and SAMUEL ALTMAN

DEFENDANTS' REPLY ISO MOTION TO DISMISS OR STAY, NO. 3:25-CV-11037-RS