UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMILY LYONS,

Plaintiff,

v.

OPENAI FOUNDATION, et al.,

Defendants.

Case No.  25-cv-11037-RS

**ORDER DENYING MOTION TO DISMISS OR STAY**

## I. INTRODUCTION

A recent suicide victim spent hundreds of hours in conversation with ChatGPT before killing himself and his mother. Defendants, various OpenAI organizations as well as OpenAI CEO Samuel Altman, are being sued by the representative of his estate. Defendants now move to dismiss or stay under the *Colorado River* doctrine based on a related action against Defendants in state court brought by the mother's estate. However, as set out below, the *Colorado River* doctrine is not applicable because there is substantial doubt that resolution of the state court action would resolve this action. Accordingly, the motion is denied.[1]

## II. BACKGROUND

Stein-Erik Soelberg killed himself and his mother Suzanne Adams in two separate acts on August 5, 2025, after hundreds of hours of conversation with Defendants' allegedly defective

---

[1] Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for April 16, 2026 is vacated.

chatbot which encouraged Soelberg's paranoid and delusional thinking. The ChatGPT model used by Soelberg, GPT-4o, was designed by Defendants to remember, confirm, and mirror a user's prompts without regard for inaccuracy or delusion. As a result, ChatGPT repeatedly told Soelberg that his family and friends were surveilling him and trying to kill him. The estates of Adams and Soelberg have each initiated legal proceedings to recover from Defendants.

On December 11, 2025, Adams' estate filed its action in state court ("the *Adams* action"), alleging that Soelberg's interactions with ChatGPT caused him to kill his mother. The *Adams* defendants are OpenAI Foundation, OpenAI OpCo, LLC, OpenAI Holdings, LLC, OpenAI Group PBC, OpenAI CEO Samuel Altman, Microsoft Corporation, and various unnamed OpenAI employees and investors. The Adams estate asserts strict liability for failure to warn and design defect, negligent design defect and failure to warn, a violation of California's Unfair Competition Law ("UCL"), wrongful death, and a survival action. The UCL claim alleges that OpenAI's business practices were unlawful and unfair because OpenAI engaged in the practice of psychology without a license or the safeguards of human judgment; exploited the psychology of vulnerable users; and stripped away safety features while ignoring evidence. The UCL claim also alleges the practices were fraudulent because OpenAI marketed GPT-4o as safe while concealing its capacity to validate paranoid delusions. The *Adams* plaintiff seeks damages and injunctive relief requiring, *inter alia*, implementation of safeguards to prevent validating users' paranoid delusions and automatic termination or escalation when users express delusions about third parties. On February 3, 2026, a petition for coordination was granted coordinating proceedings for twelve state actions against ChatGPT, including the *Adams* suit, that allege product liability and violation of California's UCL.

On December 29, 2025, Emily Lyons, in her capacity as the representative of Soelberg's estate, filed this action in federal court (the "*Lyons* action"), alleging Soelberg's interactions with ChatGPT caused him to kill himself. The *Lyons* defendants are each also named as defendants in the *Adams* action: OpenAI Foundation, OpenAI OpCo, LLC, OpenAI Holdings, LLC, OpenAI Group PBC, OpenAI CEO Samuel Altman, and various unnamed OpenAI employees and investors

("Defendants"). The Soelberg estate asserts the same causes of action as the Adams estate: strict liability for failure to warn and design defect, negligent design defect and failure to warn, UCL violations, wrongful death, and a survival action. The UCL claim alleges that OpenAI's business practices were unlawful, unfair, and fraudulent on substantially the same grounds as the *Adams* UCL claim.

The real parties in interest in both cases are the heirs to the Adams and Soelberg estates. Since the decedents were mother and son, the heirs overlap at least in part.

On March 10, 2026, Defendants filed a motion to dismiss or stay based on Federal Rule of Civil Procedure 12(b)(1), asking this Court to abstain from exercising its jurisdiction in light of the *Adams* case, and to dismiss based on Rule 12(b)(6). Plaintiff subsequently filed an affidavit ameliorating the grounds for Rule 12(b)(6) dismissal as Defendants acknowledged in their Reply. *See* Dkt. 41, Reply, at 6. Plaintiff opposes the request for dismissal or stay pursuant to the *Colorado River* doctrine.

### III. LEGAL STANDARD

Under the *Colorado River* doctrine, a federal court may dismiss or stay its own proceedings if a substantially similar proceeding is pending in state court. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19 (1976). Unlike abstention doctrines, *Colorado River* is not based on considerations regarding the federal-state relationship. *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F. 2d 1253, 1257 (9th Cir. 1988). Rather, it "rest[s] on considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817 (internal citation and quotation omitted). Thus, the doctrine presents an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813. It is properly applied only in "exceptional" circumstances. *Id.* (internal citation omitted).

A stay is not appropriate where there is "substantial doubt" that the resolution of the state proceedings will resolve the federal case. *Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002). The state and federal cases must be parallel, but the doctrine does not require exact parallelism so

United States District Court
Northern District of California

long as "the two proceedings are substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (internal quotation marks omitted).

A district court must consider whether eight factors weigh in favor of a stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011). The factors are to be considered in a "pragmatic, flexible manner with a view to the realities of the case at hand" and "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16, 21 (1983).

## IV. DISCUSSION

### A. *Colorado River* Stay or Dismissal

Defendants repeatedly misstate the law with regard to stay or dismissal under the *Colorado River* doctrine. For example, they open their discussion asserting, "[t]he *Colorado River* doctrine *requires* courts to dismiss or stay federal litigation in favor of parallel state proceedings based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " Dkt. 22, Mot. to Dismiss, at 14 (quoting *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1187 (9th Cir. 2024)) (emphasis added). This is not so. The doctrine does not *require* but "*can support* a stay or dismissal of federal litigation in favor of parallel state proceedings" based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Mendocino*, 113 F.4th at 1187 (emphasis added) (internal quotation marks and citations omitted). In fact, *Mendocino* makes clear,

Federal courts have a 'virtually unflagging obligation… to exercise the jurisdiction given

United States District Court
Northern District of California

them.' *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236. … [A] stay of federal proceedings in favor of state proceedings 'is the exception, not the rule.' [*Id.*] at 813, 96 S.Ct. 1236. 'Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. *Id.* at 817, 96 S.Ct. 1236. (internal quotation omitted).

*Id.* at 1187–88.

Despite Defendants' insistence otherwise, as a threshold matter, whether "there is substantial doubt that a final determination" in *Adams* "will resolve all of the issues" in *Lyons* is questionable. *See Holder*, 305 F.3d at 868. Then we may consider, *within this Court's discretion*, whether stay or dismissal is proper under the eight *Colorado River* factors.

### i.   Parallel Cases

A stay is not appropriate where there is doubt that the resolution of the state proceedings will resolve the federal case. *Holder*, 305 F.3d at 868; *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908 (9th Cir. 1993) ("[A] district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will end the litigation." (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988))). In *Ernest Bock, LLC v. Steelman, et al.*, federal and state proceedings that shared the same parties and claims were not sufficiently parallel because the federal case would "fully resolve the federal case *only if* the state court rule[d] in one of two ways." 76 F.4th 827, 838 (9th Cir. 2023).[2]

Here, there is substantial doubt that resolution of the *Adams* case would resolve this matter.[3] For example, whether GPT-o4 encourages—rather than safeguards for—delusions,

---

[2] While the court acknowledged that, in some previous cases, it had not required exact parallelism for a *Colorado River* stay or dismissal, it emphasized that it would be a " 'serious abuse of discretion' " to grant a stay or dismissal unless " 'the federal court will have *nothing further to do* in resolving any substantive part of the case.' " *Id.* at 841 (quoting *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. 927).

[3] Despite Defendants' arguments otherwise, whether the real parties in interest may be the same in both actions is not dispositive when the state action would not necessarily resolve the federal action. *See Intel*, 12 F.3d at 913 n.7 (A state case between two parties did not justify a *Colorado*

United States District Court
Northern District of California

paranoia, *and third-party harm* in a manner that caused Adams' death is not necessarily coextensive with whether GPT-o4 encourages delusions, paranoia, *and self-harm* in a manner that caused Soelberg's suicide. Similarly, failure to warn depends on defendants' knowledge, actual or constructive, of the risk which may not be the same risk in the case of Soelberg's violence towards himself as compared to towards Adams. Accordingly, even though the cases share certain key facts and issues, there is doubt that resolution of the state court proceedings will resolve this matter, and so a *Colorada River* stay or dismissal is not warranted. *See Holder*, 305 F.3d at 868.

### ii.   Exceptional Circumstances

Even if the *Adams* and *Lyons* actions were sufficiently parallel, the *Colorado River* doctrine presents an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," applicable only in "exceptional" circumstances. *Colo. River*, 424 U.S. at 817 (internal citation and quotation omitted). A "general preference for avoiding piecemeal litigation is insufficient to warrant abstention [.]" *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017). In *Seneca*, the "reasons that the district court offered to justify abstention—that the parallel proceedings will involve piecemeal disposition of the issues, that state law provides the rule of decision, and that the state proceeding is better suited to promote resolution of all the issues among the parties—are likely to be present in nearly every instance of concurrent state and federal suits where state law provides the rule of decision." *Id*. at 847. "These concerns 'do not create the 'exceptional circumstances' required for *Colorado River* deference because they are present to this degree in many instances of parallel federal-state litigation.'" *Id*. *See also Ernest Bock*, 76 F.4th at 837, 843 (Even when "the

*River* stay in a federal case between the same parties because there was "a substantial doubt as to whether the state court proceedings will resolve all of the disputed issues in this case.").

piecemeal litigation and order of jurisdiction factors support a stay," "[f]ollowing the Supreme Court's instruction in *Moses Cone*, we cannot uphold a stay as the New Jersey proceeding may not fully resolve the issues pending before the district court."); *United States v. State Water Res. Control Bd.*, 988 F.3d at 1208 (*Colorado River* dismissal was not merited even though a set of eleven similar actions were coordinated in state court.).

A district court must consider, "with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, 21, whether eight factors weigh in favor of a stay or dismissal. The factors are, as discussed, which court first assumed jurisdiction over at-issue property, the inconvenience of the federal forum, risk of piecemeal litigation and inconsistent rulings, the order in which the courts obtained jurisdiction, the importance of substantive state law on the merits, whether state court proceedings can adequately protect the rights of the federal litigants, desire to avoid forum shopping, and, as discussed, whether the state court proceedings will resolve all issues before the federal court. *R.R. St. & Co*, 656 F.3d 978–79.

Here, neither court assumed jurisdiction over at-issue property; Defendants do not allege inconvenience associated with the federal forum or inadequacy of federal court protection for federal litigants; and the state court obtained jurisdiction two weeks before the federal court obtained jurisdiction over the federal action with the federal action scheduled to proceed first. At best these four factors are neutral. The last, dispositive factor—whether the state court proceedings will resolve all the issues before the federal court—as discussed does not weigh in favor of Defendants.

Even if the threshold question regarding parallelism were met, the remaining factors, the risk of piecemeal litigation and inconsistent rulings, the importance of state law on the merits of the case, and avoiding forum shopping, would not tip the scales in favor of a stay or dismissal "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460

United States District Court
Northern District of California

U.S. at 16, 21. Piecemeal litigation weighed more heavily in *Colorado Rivier* because such a risk of piecemeal litigation "is heightened with respect to water rights, the relationships among which are highly interdependent." *Colo. River*, 424 U.S. at 819. By contrast, Defendants' liability here and in the *Adams* case do not implicate interdependent property rights. It is "rare" that state law questions are such that they weigh in favor of *Colorado River* dismissal or stay. *Moses H. Cone*, 460 U.S. at 26. Negligence and product liability questions, especially about new technology, are frequently litigated by federal courts and do not represent state law questions better resolved by state courts. Lastly, Defendants fail to convince that the real parties in interest engaged in forum shopping by submitting to coordinated proceedings in one action and federal court in another, separate action, and, treating the plaintiffs as separate, the *Lyons*' Plaintiff's preference for a specific forum is not improper.

### V. CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.

**IT IS SO ORDERED**.

Dated: April 13, 2026

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California