Shana E. Scarlett (SBN 217895)
Elizabeth "Ani" Lubben Zotti (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Email: shanas@hbsslaw.com
        ani.zotti@hbsslaw.com

Jacob Berman (SBN 327179)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: jakeb@hbsslaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY LYONS, Administrator c.t.a. and Personal Representative of the ESTATE OF STEIN-ERIK SOELBERG,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>OPENAI FOUNDATION (F/K/A OPENAI, INC.), a Delaware corporation, OPENAI, INC., a Delaware corporation, OPENAI OPCO LLC, a Delaware limited liability company, OPENAI HOLDINGS, LLC, a Delaware limited liability company, OPENAI GROUP PBC, a Delaware public benefit corporation SAMUEL ALTMAN, an individual, JOHN DOE EMPLOYEES 1-10, and JOHN DOE INVESTORS 1-10,<br><br>　　　　　　　　Defendants. | Civil Action No. 3:25-cv-11037-RS<br><br>**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT** |

003422-11/3563655 V1

Pursuant to Local Rules 16-9 and 16-10 and the Standing Order for All Judges of the Northern District of California, Plaintiff Emily Lyons Personal Representative for the Estate of Erik Stein Soelberg ("Plaintiff") and Defendants OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI, Inc., OpenAI OpCo, LLC, OpenAI Holdings, LLC,[1] OpenAI Group PBC (collectively, "OpenAI") and Samuel Altman (together with OpenAI, "Defendants") jointly submit this Joint Case Management Statement pursuant to Civil L.R. 16-9, Federal Rule of Civil Procedure 26(f), the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and this Court's Order scheduling the Initial Case Management Conference for May 14, 2026 (Dkt. 32).

**1.      Jurisdiction and Service:**

Plaintiff's position:

This Court has original jurisdiction of the state court action based on diversity of citizenship pursuant to 28 U.S.C. section 1332(a). Plaintiff is a citizen of Connecticut, which is different than the citizenship of every Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below. Venue is proper in this Court pursuant to 28 U.S.C. section 1391(a)-(b) and is founded on the fact Defendant OpenAI Group PBC has a principal place of business in San Francisco, California. Accordingly, venue properly lies in the United States District Court for the Northern District of California.  There are no unserved parties.

Defendants' position:

For purposes of the present action only, Defendants agree that 28 U.S.C. § 1332 is the basis for the Court's jurisdiction, there are no current service issues, and venue is proper in this Court.

**2.      Facts:**

Plaintiff's position:

On August 5, 2025, Stein-Erik Soelberg ("Mr. Soelberg") was convinced to kill his mother and then stabbed himself to death. During the months prior, Mr. Soelberg spent hundreds of hours in conversations with OpenAI's chatbot product, ChatGPT. During those conversations ChatGPT

---

[1] OpenAI Holdings, LLC merged into OpenAI Group PBC on December 31, 2025 and no longer exists as a standalone entity.

003422-11/3563655 V1

repeatedly told Mr. Soelberg that his family was surveilling him and directly encouraged a tragic end to his and his mother's lives.

ChatGPT's interactions with Mr. Soelberg were a consequence of specific design choices made by OpenAI, which the company knew put users at risk. GPT-4o, the model that Mr. Soelberg was using, was engineered to remember everything that a user had previously said to it and incorporate that content into new conversations. It was also designed to confirm and mirror whatever a user typed into its interface, without regard for inaccuracies or delusions. OpenAI knew there were risks associated with these features for those suffering from mental illness, but it rushed through or ignored most of its internal safety protocols before launching GPT-4o to the public. The company planned on "iterating" or fixing ChatGPT's safety flaws while the product was live and in public hands.

The results of OpenAI's GPT-4o iteration are in: the product can be and foreseeably is deadly. Not just for those suffering from mental illness, but those around them. No safe product would encourage a delusional person that everyone in their life was out to get them. And yet that is exactly what OpenAI did with Mr. Soelberg. As a direct and foreseeable result of ChatGPT-4o's flaws, Mr. Soelberg and his mother died.

The Estate of Stein-Erik Soelberg brings claims for strict product liability based on a design defect, strict liability and negligence based on a failure to warn violations of Cal. Bus. & Prof. Code § 17200, et seq., wrongful death, and survival against the defendants. The Estate seeks damages for their breaches of duty as set forth below.

Defendants' position:

Our hearts go out to everyone affected by this tragedy, especially the survivors of Suzanne Adams and Mr. Soelberg. Safety is a top priority for OpenAI, and OpenAI is committed to identifying and understanding the facts of this case in order to continue to build a safe and beneficial technology that furthers OpenAI's mission of ensuring artificial general intelligence benefits all of humanity. To that end, OpenAI aims to ensure that the important issues raised by this litigation are addressed accurately and respectfully, and grounded in facts.

003422-11/3563655 V1

Defendants offer the following factual overview based on (A) allegations in Plaintiff's complaint; (B) information about Mr. Soelberg from the public record; and (C) background about Defendants and OpenAI's ChatGPT service.

**(A) Allegations in the complaint:** Defendants dispute any and all wrongdoing on their behalf and will strongly dispute any and all allegations of liability.

**(B) Factual background about Stein-Erik Soelberg:** According to the public record, Mr. Soelberg had an extensive history of mental illness and violent behavior that long predated his use of ChatGPT. That history includes multiple prior suicide attempts, violence and threatened violence against his domestic partner(s) and family members, and drug and alcohol abuse. Dkt. 22 at n.2.

In 2019, Ms. Lyons sought a restraining order against Mr. Soelberg, and in her related affidavit, Ms. Lyons stated that Mr. Soelberg "ha[d] a history of drug and alcohol abuse," as well as "suicidal tendencies," "prior suicide threats," beginning in 2010, and suicide threat(s) in front of his children starting in August 2017. *Id.* Additionally, Ms. Lyons' affidavit states that Mr. Soelberg attempted suicide on multiple occasions, including "by overdosing on oxycontin" in or around 2018, "by jumping into the Long Island Sound," and by "stabb[ing] himself several times with a knife" while "drunk" around the summer of 2019. *Id*.

Ms. Lyons further stated that sometime after she divorced Mr. Soelberg and before July 2019, Mr. Soelberg's "girlfriend broke up with him and subsequently filed a restraining order against him after she claims he tried to strangle her." Dkt. 22-8 at 9.

Police records from 2019 and 2025 similarly reflect that Mr. Soelberg had a "mental health history," was a "known EDP [emotionally disturbed person]," and attempted suicide on multiple occasions. Dkt. 22-1 at ¶ 12; Dkt. 22-9 at 6-7, 14-26, 62. Those same records detail the protective order taken out against him by his ex-girlfriend, *id.* at 41, and report that he violated a protective order, *id.* at 52-55. In June 2019, police officers followed a trail of blood that began in his then-girlfriend's home only to find Mr. Soelberg face down in an alleyway with puncture wounds to his chest. *Id*. at 31. His then-girlfriend told police that Mr. Soelberg had a history of mental health issues and that Mr. Soelberg's mood shifted following an adjustment to his medication. *Id*. at 24.

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT
Case No. 3:25-cv-11037-RS
003422-11/3563655 V1

Following Mr. Soelberg's suicide, Ms. Lyons again confirmed to the police that Mr. Soelberg was an alcoholic, suffered from severe mental health issues, and made threats of suicide over the years. Dkt. 22-9 at 130–31. An old friend also contacted police and confirmed that Mr. Soelberg had a history of delusional and bizarre behavior, as well as drug and alcohol use, for which his friends had attempted to get him help. *Id*. at 128.

**(C) Factual background about Defendants:** Artificial intelligence (AI) is a critically important and transformative technology that can have—and already has had—significant positive impact on society. OpenAI operates the ChatGPT artificial intelligence service, which is used by hundreds of millions of people worldwide to improve their daily lives, while also helping to advance scientific discovery and medical research. OpenAI is committed to the safety of its users, and is the leader in developing safe and beneficial artificial intelligence. OpenAI has pioneered many of the foundational safety practices used across the industry. This is core to OpenAI's mission to ensure that artificial general intelligence benefits all of humanity.

Safety is a focus of teams across OpenAI. OpenAI employs leading safety experts and researchers who are dedicated to all aspects of safety, ranging from shaping model behavior to red-teaming (in which experts are used to conduct adversarial testing and inform risk assessment and mitigation efforts) and feedback to iterative deployment. Safety is built into every step of OpenAI's model development process. That process starts with model design and pre-training to teach the model language and intelligence and continues through post-training to align the model to safety principles so that it provides helpful and safe answers. OpenAI applies safety principles at every stage of model training, implementing system-level guardrails and investing in long-term safety research. OpenAI also conducts extensive pre-deployment evaluations, where the model goes through safety evaluations, including red-teaming—all of which occur before the model is released to the public. OpenAI collaborates with external experts, trusted partners, and researchers to stress test models and gather feedback, and has developed a Preparedness Framework to test and evaluate catastrophic risk areas. Every model released by OpenAI, including the model at issue in Plaintiff's complaint, undergoes that state-of-the-art safety process prior to deployment.

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

**3.    Legal Issues:**

Plaintiff's position: Legal issues concerning Plaintiff's product liability claims, unfair competition, and wrongful death claims include:

(a)    Whether Defendants' product, ChatGPT, was unreasonably dangerous when it left the manufacturer, and thus defectively designed.

(b)    Whether the defect was present when Defendants distributed ChatGPT.

(c)    Whether Mr. Soelberg used ChatGPT in a reasonably foreseeable manner.

(d)    Whether the defect was a substantial factor causing Mr. Soelberg's injuries and death.

(e)    Whether ChatGPT posed a non-obvious risk of harm when used in a reasonably foreseeable way.

(f)    Whether Defendants knew or reasonably should have known about the risk.

(g)    Whether the product lacked adequate warnings or instructions about the risk.

(h)    Whether Mr. Soelberg would have acted differently if a proper warning had been given.

(i)    Whether the Plaintiff suffered actual harm.

(j)    Whether ChatGPT's interactions with Plaintiff were considered the practice of psychotherapy, as contemplated by Cal. Bus. & Prof. Code § 17200.

(k)    Whether Defendants, through ChatGPT, were practicing psychotherapy without a license.

(l)    Whether Plaintiff suffered economic injury as a result.

(m)    Whether Plaintiff suffered economic and non-economic damages as a result of Mr. Soelberg's death.

The foregoing list is not an admission that these are the only legal issues that Plaintiff intends to dispute or raise nor a waiver of Plaintiff's right to raise and/or dispute these and any other legal issue in the appropriate course.

Defendants' position:

Defendants dispute any and all wrongdoing on their behalf, including all allegations of liability in Plaintiff's complaint. In addition to the legal issues outlined in Plaintiff's position, Defendants anticipate disputing the following issues:

- 5 -

003422-11/3563655 V1

(a) Whether Plaintiff's claims are barred and/or Plaintiff's damages must be reduced under comparative fault principles because, to the extent that any "cause" can be attributed to the tragic event of Mr. Soelberg's murder-suicide, any injuries or damages alleged were caused or contributed to by the acts or omissions of Mr. Soelberg and/or other persons;

(b) Whether any injuries or damages alleged in Plaintiff's complaint were caused by or contributed to, directly or proximately, in whole or in part, by Mr. Soelberg's misuse, unauthorized use, unintended use, unforeseeable use, and/or improper use of ChatGPT;

(c) Whether Plaintiff's claims against Defendant OpenAI's CEO fail because they seek to hold him liable by virtue of his corporate role;

(d) Whether Plaintiff's claims fail because OpenAI's alleged conduct was not knowing or willful;

(e) Whether the nature of the harm Plaintiff alleges is beyond the scope of a legally cognizable duty;

(f) Whether Plaintiff's claims are barred by the First Amendment of the United States Constitution;

(g) Whether Plaintiff's product liability claims fail because ChatGPT is a service and/or not a "product";

(h) Whether Plaintiff may recover from Defendants when the methods, standards, or techniques of designing and making available the services at issue complied with and were in conformity with the generally recognized state of the art at the time the services were designed and made available to users;

(i) Whether Plaintiff's equitable claims are barred because they are moot;

(j) Whether Plaintiff's claims are barred or preempted, in whole or in part, by Section 230 of the Communications Decency Act, 47 U.S.C. § 230;

(k) Whether punitive damages are not recoverable by Plaintiff because Plaintiff has failed to allege or establish any conduct that would support an award of punitive damages; and

- 6 -

003422-11/3563655 V1

(l) Whether Plaintiff's claims are barred in whole or in part by contracts and/or agreements, including the integrated Terms of Use, into which Mr. Soelberg entered.

The foregoing list is not an admission that these are the only legal issues that Defendants intend to dispute or raise nor a waiver of Defendants' right to raise and/or dispute these and any other legal issue in the appropriate course.

**4.    Motions:**

Plaintiff's position: The Parties will meet and confer in advance of the deadline for dispositive motions to determine if they will file cross-motions for summary judgment.

Defendants' position: Defendants filed a motion to dismiss Plaintiff's complaint, and the Court ruled on that motion on April 13, 2026. Dkt. 42. Defendants anticipate that they will move for summary judgment, and may file other motions as needed.

**5.    Amendment of Pleadings:**

Plaintiff's position: Plaintiffs reserve all rights to amend their complaint, either by right or upon leave of the Court, but do not presently anticipate any further amendments.

Defendants' position: When the Court sets a case schedule, Defendants will propose a deadline for amended pleadings that is at least 90 days before the close of fact discovery.

**6.    Evidence Preservation:**

The Parties are unaware of any evidence preservation issues in this regard at this time. The Parties certify that they have reviewed the Court's ESI Guidelines and confirm that they have taken steps to preserve ESI and will continue to do so.

**7.    Disclosures:**

The Parties agreed to exchange initial disclosures by May 7, 2026.

**8.    Discovery:**

Plaintiff's position:

No discovery has occurred to date. Plaintiff does not see any need for phased or bifurcated discovery.

- 7 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

Types of Discovery: The Parties anticipate utilizing the following methods of discovery: interrogatories, requests for production, and requests for admission (as appropriate), depositions, third-party subpoenas, and expert discovery. The Parties reserve the right to use additional methods of discovery as warranted.

Limitations on Discovery: The Parties do not currently anticipate needing any changes to the limitations on discovery set forth in the Federal Rules of Civil Procedure. However, the Parties reserve their rights to seek leave to modify limitations should it become reasonably necessary to do so.

Prior to litigation, Plaintiff sought Defendants' chat logs between Erik Soelberg and ChatGPT. ChatGPT's terms of use assign the property rights of chat transcripts – referred to as "Content" by Defendants – to its users. However, Defendants have refused to produce the chat logs.

Confidentiality/Protective Order:

Defendants' position:

There have been no discovery requests served by either side. The parties are due to exchange initial disclosures on May 7, 2026. Otherwise, no discovery has occurred to date. Defendants agree with the general types of discovery that Plaintiff has outlined.

As discussed below, Defendants propose that any scheduling in this case, including discovery, take place in coordination with the initial case management conference scheduled for July 24, 2026 in the related coordinated California Superior Court JCCP proceeding and that, at a minimum, all discovery in this federal action proceed in coordination and tandem with discovery in that coordinated proceeding. *See infra* ¶¶ 10, 15. In accord with that approach, certain changes to the limitations on discovery in the Federal Rules of Civil Procedure may become necessary. Defendants propose that the parties meet and confer regarding an e-discovery order, ESI protocol, and a protective order in coordination with the JCCP parties and in alignment with the scheduling considerations proposed below. *Id.*

- 8 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

**9.     Class Actions: N/A**

**10.     Related Cases:**

Plaintiff's position:

Central to this case is the incident in which Mr. Soelberg killed his mother, Suzanne Adams, and committed suicide. Ms. Adams' estate has also filed suit against the same defendants as those here, with some additions. *First Country Bank v. OpenAI Foundation, et.al.*, No. CGC-25-631477 (Cal. Super. Dec. 11, 2025).

Defendants' position:

As Defendants discussed more fully in their response to Plaintiff's Civil L.R. 3-13 notice filed on April 30, 2026 (Dkt. 46, "Defendants' L.R. 3-13 Response"), this federal lawsuit is inextricably linked to *Adams*, the substantially similar and earlier-filed lawsuit in California state court, asserting the very same seven causes of action on behalf of the same real parties in interest and based upon the same core factual allegations. Notably, Plaintiff agrees that this action and *Adams* are "nearly identical." Dkt. 43, 1.

*Adams* is one of more than a dozen California state court actions asserting virtually identical claims and allegations about OpenAI's design of GPT-4o (the "Related Actions"), the first of which was filed in August 2025. Each of the Related Actions alleges that the design of GPT-4o caused the plaintiffs or their family members mental health injuries, and in some cases, death. And like this action, each complaint in the Related Actions asserts claims for strict product liability (design defect), strict product liability (failure to warn), negligence (design defect), negligence (failure to warn), and UCL violation. Some of the Related Actions, like this action, assert wrongful death and survival claims. *Adams* and eleven of the Related Actions have been coordinated into one proceeding in California state court (the "ChatGPT JCCP"), where an initial case management conference is set for July 24, 2026. Requests to coordinate several additional cases are pending. As outlined in Defendants' L.R. 3-13 Response, coordinating this case with *Adams* and the other Related Actions in the ChatGPT JCCP will help avoid conflicting rulings; conserve judicial, party, and third-party resources; and promote an efficient determination of this federal action.

- 9 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

**11.    Relief:**

Plaintiff's position:

Plaintiff seeks to recover for all survival damages recoverable as successors-in-interest, including Mr. Soelberg's pre-death economic losses and pre-death pain and suffering, in amounts to be determined at trial. Plaintiff also seeks to recover for all damages recoverable for wrongful death under California Code of Civil Procedure sections 377.6 and 377.61, including non-economic damages for the loss of Mr. Soelberg's love, companionship, comfort, care, assistance, protection, affection, society, and moral support, and economic damages including funeral and burial expenses, the value of household services, and the financial support Mr. Soelberg would have provided.

Additionally, Plaintiff seeks to recover for restitution of monies paid by or on behalf of Mr. Soelberg for his ChatGPT Plus subscription and for injunctive relief requiring Defendants (a) implement safeguards to prevent ChatGPT from validating users' paranoid delusions about identified individuals; (b) require automatic conversation termination or escalation when users express delusional beliefs about identified third parties; (c) restore programming requiring ChatGPT to challenge or reject users' false premises; (d) display clear, prominent warnings disclosing the risk that ChatGPT may validate false beliefs, including delusional beliefs about family members; (e) disclose to users and their families that ChatGPT's safety features degrade during multi-turn conversations; (f) implement safeguards to recognize patterns consistent with paranoid psychosis and respond appropriately; (g) cease marketing ChatGPT without appropriate safety disclosures regarding risks to users experiencing mental health crises and the people around them; (h) delete models, training data, and derivatives built from conversations obtained without appropriate safeguards; (i) implement auditable data-provenance controls going forward; and (j) submit to quarterly compliance audits by an independent monitor.

Finally, Plaintiff seeks to recover for prejudgment interest, costs, expenses, and attorneys' fees as permitted by law.

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT
Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

Defendants' position:

Defendants deny liability for the allegations in the complaint. *See* Dkt. 44. Defendants state that Plaintiff has no basis on which to claim damages or on which to recover the other relief that she seeks, including injunctive relief. *Id.* at 20.

**12.    Settlement and ADR:**

The parties will comply with all local requirements. As indicated in the ADR Certifications that the parties filed on March 10, 2026 (Dkts. 24, 25), the parties prefer to discuss ADR selection at the case management conference.

**13.    Other References:**

The parties believe this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

**14.    Narrowing of Issues:**

Plaintiff's position:

The parties will work to narrow issues by agreement and/or motion after discovery has progressed.  The parties will also seek to stipulate to facts not reasonably in dispute. At a later time, as discovery progresses, the parties will meet and confer to discuss limiting the number of asserted claims and defenses.

Defendants' position:

Defendants agree the parties will work to narrow issues by agreement and/or motion in due course.

**15.    Scheduling:**

Plaintiff's position:

Plaintiff proposes the following schedule:

| EVENT | DEADLINE |
| --- | --- |
| Initial Disclosure | 5/7/2026 |
| Fact Discovery | 12/10/2026 |
| Plaintiff's Expert Disclosure | 01/15/2027 |

- 11 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

| EVENT | DEADLINE |
|-------|----------|
| Defendants' Expert Disclosure | 01/31/2027 |
| Parties' Rebuttal Expert Disclosure | 2/20/2027 |
| Trial Date | 08/05/2027 |

Defendants' position:

Any scheduling in this case should be done in conjunction with the recently formed ChatGPT JCCP, which has an initial case management conference scheduled for July 24, 2026. Accordingly, Defendants propose that the Court schedule a second case management conference in this action for August 27, 2026.

Coordinating with the ChatGPT JCCP will ensure, at a minimum, that there is not unnecessary duplication of effort in light of the undoubtedly similar—if not identical—discovery of OpenAI (and corresponding discovery disputes) that will be pursued both here and in the ChatGPT JCCP, including but not limited to the same depositions of OpenAI employees, the same OpenAI documents, and the same written discovery from OpenAI. The JCCP will also involve overlapping—if not identical—third-party and plaintiff discovery in *Adams*. Dkt. 46 (L.R. 3-13 Response).

In any event, Plaintiff's proposed schedule should not be entered because it does not allow sufficient time for the complex fact discovery and expert discovery that will be required by the novel claims in this case. Nor does Plaintiff's proposed schedule provide time for the Court to consider and rule on summary judgment and expert motions prior to trial and pre-trial filings.

Based on current information, at least the following amounts of time will be necessary for important phases of the litigation: 18-24 months for fact discovery, 6-9 months for expert discovery, and ample time for summary judgment and expert motions.

**16.    Trial:**

Plaintiff's position:

Plaintiff demands a jury trial. Plaintiff believes that the length of trial will depend on which, and to what extent, issues are resolved during the course of litigation, but anticipate a 7-day trial.

- 12 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

Defendants' position:

Defendants do not demand a jury trial. Defendants also do not presently have a position on whether any trial here would be appropriately before a jury because, for example, Defendants do not know which (if any) of the claims would be tried. For the same reasons, Defendants do not presently have an estimate for the length of a trial.

**17.    Disclosure of Non-Party Interested Entities or Persons:**

On March 3, 2026, Plaintiff filed its Certificate of Interested Entities. (Dkt. 19). Defendants filed a Certificate of Interested Entities, Citizenship, and Corporate Disclosure Statement on March 10, 2026. Dkt. 23. Other than those already disclosed, there are no other known non-party interested entities or persons.

**18.    Professional Conduct:**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED: May 7, 2026                         Respectfully submitted,

                                            **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                            By */s/ Elizabeth "Ani" Lubben Zotti*
                                               Elizabeth "Ani" Lubben Zotti (*pro hac vice*)
                                            Shana E. Scarlett (SBN 217895)
                                            715 Hearst Avenue, Suite 300
                                            Berkeley, CA 94710
                                            Telephone: (510) 725-3000
                                            Email: ani.zotti@hbsslaw.com
                                                   shanas@hbsslaw.com

                                            Jacob Berman (SBN 327179)
                                            **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                            1301 Second Avenue, Suite 2000
                                            Seattle, WA  98101
                                            Telephone: (206) 623-7292
                                            Facsimile:  (206) 623-0594
                                            Email: jakeb@hbsslaw.com

                                            *Attorneys for Plaintiff*

                                            By:  */s/ Edward D. Johnson*
                                            EDWARD D. JOHNSON (SBN 189475)

- 13 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

ANTHONY J WEIBELL (SBN 238850)
KRISTIN W. SILVERMAN (SBN 341952)
ELSPETH V. HANSEN (SBN 292193)
WJohnson@mayerbrown.com
AWeibell@mayerbrown.com
KSilverman@mayerbrown.com
EHansen@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306
Tel.:  (650) 331-2000
Fax:  (650) 331-2060

ANKUR MANDHANIA (SBN 302373)
CHRISTOPHER RHEINHEIMER (SBN 253890)
AMandhania@mayerbrown.com
CRheinheimer@mayerbrown.com
MAYER BROWN LLP
101 Second Street, 17th Floor
San Francisco, CA  94105
Tel.:  (415) 874-4230
Fax:  (415) 331-2060

ANDREW J. PINCUS (*pro hac vice*)
APincus@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
Tel.:    (202) 263-3000
Fax:    (202) 263-3300

GRAHAM WHITE (*pro hac vice*)
GWhite@mayerbrown.com
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York  10020
Tel.:    (212) 506-2500
Fax:    (212) 262-1910

MALORI MCGILL FERY (*pro hac vice*)
MMcGillFery@mayerbrown.com
MAYER BROWN LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84101
Tel.:  (801) 907-2700
Fax:  (801) 880-2221

- 14 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

*Attorneys for Defendants*
OPENAI FOUNDATION, OPENAI OPCO, LLC, OPENAI HOLDINGS, LLC, OPENAI GROUP PBC, and SAMUEL ALTMAN

- 15 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT

Case No. 3:25-cv-11037-RS

003422-11/3563655 V1

## FILER ATTESTATION

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: May 7, 2026                              By:  */s/ Elizabeth "Ani" Lubben Zotti*
                                                     Elizabeth "Ani" Lubben Zotti

- 16 -
JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT
Case No. 3:25-cv-11037-RS

003422-11/3563655 V1