Shana E. Scarlett (SBN 217895)
Elizabeth "Ani" Lubben Zotti (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Email: shanas@hbsslaw.com
        ani.zotti@hbsslaw.com

Jacob Berman (SBN 327179)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: jakeb@hbsslaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY LYONS, Administrator c.t.a. and Personal Representative of the ESTATE OF STEIN-ERIK SOELBERG,<br><br>                    Plaintiff,<br><br>v.<br><br>OPENAI FOUNDATION (F/K/A OPENAI, INC.), a Delaware corporation, OPENAI, INC., a Delaware corporation, OPENAI OPCO LLC, a Delaware limited liability company, OPENAI HOLDINGS, LLC, a Delaware limited liability company, OPENAI GROUP PBC, a Delaware public benefit corporation SAMUEL ALTMAN, an individual, JOHN DOE EMPLOYEES 1-10, and JOHN DOE INVESTORS 1-10,<br><br>                    Defendants. | Civil Action No. 3:25-cv-11037-RS<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to Local Rules 16-9 and 16-10 and the Standing Order for All Judges of the Northern District of California, Plaintiff Emily Lyons Personal Representative for the Estate of Erik Stein Soelberg ("Plaintiff") and Defendants OpenAI Foundation (f/k/a OpenAI, Inc.), OpenAI, Inc., OpenAI OpCo, LLC, OpenAI Holdings, LLC,[1] OpenAI Group PBC (collectively, "OpenAI") and Samuel Altman (together with OpenAI, "Defendants") jointly submit this Joint Case Management Statement pursuant to Civil L.R. 16-9, Federal Rule of Civil Procedure 26(f), the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and this Court's Order scheduling a further Case Management Conference for August 6, 2026 (Dkt. 49).

**1.    Jurisdiction and Service:**

Plaintiff's position:

This Court has original jurisdiction of the state court action based on diversity of citizenship pursuant to 28 U.S.C. section 1332(a). Plaintiff is a citizen of Connecticut, which is different than the citizenship of every Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below. Venue is proper in this Court pursuant to 28 U.S.C. section 1391(a)-(b) and is founded on the fact Defendant OpenAI Group PBC has a principal place of business in San Francisco, California. Accordingly, venue properly lies in the United States District Court for the Northern District of California.  There are no unserved parties.

Defendants' position:

For purposes of the present action only, Defendants agree that 28 U.S.C. § 1332 is the basis for the Court's jurisdiction, there are no current service issues, and venue is proper in this Court.

**2.    Facts:**

Plaintiff's position:

On August 5, 2025, Stein-Erik Soelberg ("Mr. Soelberg") was convinced to kill his mother and then stabbed himself to death. During the months prior, Mr. Soelberg spent hundreds of hours in conversations with OpenAI's chatbot product, ChatGPT. During those conversations ChatGPT

---

[1] OpenAI Holdings, LLC merged into OpenAI Group PBC on December 31, 2025 and no longer exists as a standalone entity.

repeatedly told Mr. Soelberg that his family was surveilling him and directly encouraged a tragic end to his and his mother's lives.

ChatGPT's interactions with Mr. Soelberg were a consequence of specific design choices made by OpenAI, which the company knew put users at risk. GPT-4o, the model that Mr. Soelberg was using, was engineered to remember everything that a user had previously said to it and incorporate that content into new conversations. It was also designed to confirm and mirror whatever a user typed into its interface, without regard for inaccuracies or delusions. OpenAI knew there were risks associated with these features for those suffering from mental illness, but it rushed through or ignored most of its internal safety protocols before launching GPT-4o to the public. The company planned on "iterating" or fixing ChatGPT's safety flaws while the product was live and in public hands.

The results of OpenAI's GPT-4o iteration are in: the product can be and foreseeably is deadly. Not just for those suffering from mental illness, but those around them. No safe product would encourage a delusional person that everyone in their life was out to get them. And yet that is exactly what OpenAI did with Mr. Soelberg. As a direct and foreseeable result of ChatGPT-4o's flaws, Mr. Soelberg and his mother died.

The Estate of Stein-Erik Soelberg brings claims for strict product liability based on a design defect, strict liability and negligence based on a failure to warn violations of Cal. Bus. & Prof. Code § 17200, et seq., wrongful death, and survival against the defendants. The Estate seeks damages for their breaches of duty as set forth below.

Defendants' position:

Our hearts go out to everyone affected by this tragedy, especially the survivors of Suzanne Adams and Mr. Soelberg. Safety is a top priority for OpenAI, and OpenAI is committed to identifying and understanding the facts of this case in order to continue to build a safe and beneficial technology that furthers OpenAI's mission of ensuring artificial general intelligence benefits all of humanity. To that end, OpenAI aims to ensure that the important issues raised by this litigation are addressed accurately and respectfully, and grounded in facts.

Defendants offer the following factual overview based on (A) allegations in Plaintiff's complaint; (B) information about Mr. Soelberg from the public record; and (C) background about Defendants and OpenAI's ChatGPT service.

**(A) Allegations in the complaint:** Defendants dispute any and all wrongdoing on their behalf and will strongly dispute any and all allegations of liability.

**(B) Factual background about Stein-Erik Soelberg:** According to the public record, Mr. Soelberg had an extensive history of mental illness and violent behavior that long predated his use of ChatGPT. That history includes multiple prior suicide attempts, violence and threatened violence against his domestic partner(s) and family members, and drug and alcohol abuse. Dkt. 22 at n.2.

In 2019, Ms. Lyons sought a restraining order against Mr. Soelberg, and in her related affidavit, Ms. Lyons stated that Mr. Soelberg "ha[d] a history of drug and alcohol abuse," as well as "suicidal tendencies," "prior suicide threats," beginning in 2010, and suicide threat(s) in front of his children starting in August 2017. *Id.* Additionally, Ms. Lyons' affidavit states that Mr. Soelberg attempted suicide on multiple occasions, including "by overdosing on oxycontin" in or around 2018, "by jumping into the Long Island Sound," and by "stabb[ing] himself several times with a knife" while "drunk" around the summer of 2019. *Id*.

Ms. Lyons further stated that sometime after she divorced Mr. Soelberg and before July 2019, Mr. Soelberg's "girlfriend broke up with him and subsequently filed a restraining order against him after she claims he tried to strangle her." Dkt. 22-8 at 9.

Police records from 2019 and 2025 similarly reflect that Mr. Soelberg had a "mental health history," was a "known EDP [emotionally disturbed person]," and attempted suicide on multiple occasions. Dkt. 22-1 at ¶ 12; Dkt. 22-9 at 6-7, 14-26, 62. Those same records detail the protective order taken out against him by his ex-girlfriend, *id.* at 41, and report that he violated a protective order, *id.* at 52-55. In June 2019, police officers followed a trail of blood that began in his then-girlfriend's home only to find Mr. Soelberg face down in an alleyway with puncture wounds to his chest. *Id*. at 31. His then-girlfriend told police that Mr. Soelberg had a history of mental health issues and that Mr. Soelberg's mood shifted following an adjustment to his medication. *Id*. at 24.

Following Mr. Soelberg's suicide, Ms. Lyons again confirmed to the police that Mr. Soelberg was an alcoholic, suffered from severe mental health issues, and made threats of suicide over the years. Dkt. 22-9 at 130–31. An old friend also contacted police and confirmed that Mr. Soelberg had a history of delusional and bizarre behavior, as well as drug and alcohol use, for which his friends had attempted to get him help. *Id*. at 128.

**(C) Factual background about Defendants:** Artificial intelligence (AI) is a critically important and transformative technology that can have—and already has had—significant positive impact on society. OpenAI operates the ChatGPT artificial intelligence service, which is used by hundreds of millions of people worldwide to improve their daily lives, while also helping to advance scientific discovery and medical research. OpenAI is committed to the safety of its users, and is the leader in developing safe and beneficial artificial intelligence. OpenAI has pioneered many of the foundational safety practices used across the industry. This is core to OpenAI's mission to ensure that artificial general intelligence benefits all of humanity.

Safety is a focus of teams across OpenAI. OpenAI employs leading safety experts and researchers who are dedicated to all aspects of safety, ranging from shaping model behavior to red-teaming (in which experts are used to conduct adversarial testing and inform risk assessment and mitigation efforts) and feedback to iterative deployment. Safety is built into every step of OpenAI's model development process. That process starts with model design and pre-training to teach the model language and intelligence and continues through post-training to align the model to safety principles so that it provides helpful and safe answers. OpenAI applies safety principles at every stage of model training, implementing system-level guardrails and investing in long-term safety research. OpenAI also conducts extensive pre-deployment evaluations, where the model goes through safety evaluations, including red-teaming—all of which occur before the model is released to the public. OpenAI collaborates with external experts, trusted partners, and researchers to stress test models and gather feedback, and has developed a Preparedness Framework to test and evaluate catastrophic risk areas. Every model released by OpenAI, including the model at issue in Plaintiff's complaint, undergoes that state-of-the-art safety process prior to deployment.

**3.      Legal Issues:**

Plaintiff's position: Legal issues concerning Plaintiff's product liability claims, unfair competition, and wrongful death claims include:

(a)      Whether Defendants' product, ChatGPT, was unreasonably dangerous when it left the manufacturer, and thus defectively designed.

(b)      Whether the defect was present when Defendants distributed ChatGPT.

(c)      Whether Mr. Soelberg used ChatGPT in a reasonably foreseeable manner.

(d)      Whether the defect was a substantial factor causing Mr. Soelberg's injuries and death.

(e)      Whether ChatGPT posed a non-obvious risk of harm when used in a reasonably foreseeable way.

(f)      Whether Defendants knew or reasonably should have known about the risk.

(g)      Whether the product lacked adequate warnings or instructions about the risk.

(h)      Whether Mr. Soelberg would have acted differently if a proper warning had been given.

(i)      Whether the Plaintiff suffered actual harm.

(j)      Whether ChatGPT's interactions with Plaintiff were considered the practice of psychotherapy, as contemplated by Cal. Bus. & Prof. Code § 17200.

(k)      Whether Defendants, through ChatGPT, were practicing psychotherapy without a license.

(l)      Whether Plaintiff suffered economic injury as a result.

(m)      Whether Plaintiff suffered economic and non-economic damages as a result of Mr. Soelberg's death.

The foregoing list is not an admission that these are the only legal issues that Plaintiff intends to dispute or raise nor a waiver of Plaintiff's right to raise and/or dispute these and any other legal issue in the appropriate course.

Defendants' position:

Defendants dispute any and all wrongdoing on their behalf, including all allegations of liability in Plaintiff's complaint. In addition to the legal issues outlined in Plaintiff's position, Defendants anticipate disputing the following issues:

(a) Whether Plaintiff's claims are barred and/or Plaintiff's damages must be reduced under comparative fault principles because, to the extent that any "cause" can be attributed to the tragic event of Mr. Soelberg's murder-suicide, any injuries or damages alleged were caused or contributed to by the acts or omissions of Mr. Soelberg and/or other persons;

(b) Whether any injuries or damages alleged in Plaintiff's complaint were caused by or contributed to, directly or proximately, in whole or in part, by Mr. Soelberg's misuse, unauthorized use, unintended use, unforeseeable use, and/or improper use of ChatGPT;

(c) Whether Plaintiff's claims against Defendant OpenAI's CEO fail because they seek to hold him liable by virtue of his corporate role;

(d) Whether Plaintiff's claims fail because OpenAI's alleged conduct was not knowing or willful;

(e) Whether the nature of the harm Plaintiff alleges is beyond the scope of a legally cognizable duty;

(f) Whether Plaintiff's claims are barred by the First Amendment of the United States Constitution;

(g) Whether Plaintiff's product liability claims fail because ChatGPT is a service and/or not a "product";

(h) Whether Plaintiff may recover from Defendants when the methods, standards, or techniques of designing and making available the services at issue complied with and were in conformity with the generally recognized state of the art at the time the services were designed and made available to users;

(i) Whether Plaintiff's equitable claims are barred because they are moot;

(j) Whether Plaintiff's claims are barred or preempted, in whole or in part, by Section 230 of the Communications Decency Act, 47 U.S.C. § 230;

(k) Whether punitive damages are not recoverable by Plaintiff because Plaintiff has failed to allege or establish any conduct that would support an award of punitive damages; and

(l) Whether Plaintiff's claims are barred in whole or in part by contracts and/or agreements, including the integrated Terms of Use, into which Mr. Soelberg entered.

The foregoing list is not an admission that these are the only legal issues that Defendants intend to dispute or raise nor a waiver of Defendants' right to raise and/or dispute these and any other legal issue in the appropriate course.

**4.      Motions:**

Plaintiff's position: The Parties will meet and confer in advance of the deadline for dispositive motions to determine if they will file cross-motions for summary judgment.

Defendants' position: Defendants filed a motion to dismiss Plaintiff's complaint, and the Court ruled on that motion on April 13, 2026. Dkt. 42. Defendants anticipate that they will move for summary judgment, and may file other motions as needed.

**5.      Amendment of Pleadings:**

Plaintiff's position: Plaintiffs reserve all rights to amend their complaint, either by right or upon leave of the Court, but do not presently anticipate any further amendments.

Defendants' position: As below, Defendants propose a deadline for amended pleadings that is at least 90 days before the close of fact discovery.

**6.      Evidence Preservation:**

The Parties are unaware of any evidence preservation issues in this regard at this time. The Parties certify that they have reviewed the Court's ESI Guidelines and confirm that they have taken steps to preserve ESI and will continue to do so.

**7.      Disclosures:**

The Parties exchanged initial disclosures on May 7, 2026.

**8.      Discovery:**

Plaintiff's position:

Plaintiff has sought, and Defendants have produced, Mr. Soelberg's chat logs. Plaintiff has also sought various metrics and other information related to the logs, which Defendants have not yet produced. Plaintiff plans on requesting further production after the second case management conference on August 6th. Plaintiff does not see any need for phased or bifurcated discovery.

Types of Discovery: The Parties anticipate utilizing the following methods of discovery: interrogatories, requests for production, and requests for admission (as appropriate), depositions,

third-party subpoenas, and expert discovery.  The Parties reserve the right to use additional methods of discovery as warranted.

Limitations on Discovery: The Parties do not currently anticipate needing any changes to the limitations on discovery set forth in the Federal Rules of Civil Procedure. However, the Parties reserve their rights to seek leave to modify limitations should it become reasonably necessary to do so.

Defendants' position:

The parties exchanged initial disclosures on May 7, 2026.  On May 15, 2026, Plaintiff served an initial set of two document requests.  Defendants made an initial production of documents pursuant to the parties' provisional confidentiality agreement.  Defendants also stated that they will "produce reasonably accessible nonprivileged documents, if any, found after a reasonable search that . . . are responsive" to Plaintiff's requests "on a rolling basis after an appropriate protective order has been entered." Otherwise, no discovery has occurred since this case was filed on December 29, 2025. Defendants agree with the general types of discovery that Plaintiff has outlined.

On June 29, 2026, Defendants proposed an ESI protocol to Plaintiff in this action and all Plaintiffs in *In re ChatGPT Product Liability Cases*, No. CJC-25-005431 (San Francisco County) (the "Related JCCP").  Based on this Court's direction during the May 14, 2026 CMC to avoid inefficiencies and redundancies in discovery as this action and the Related JCCP proceed in parallel, Defendants proposed that the parties in both this action and the Related JCCP agree to the same ESI protocol.  On July 16, 2026, Plaintiff in this action provided edits to the proposed ESI protocol.  Defendants have provided those edits to Plaintiffs in the Related JCCP and anticipate the parties in all actions will be coordinating to finalize this document soon.

On July 24, 2026, Plaintiff requested that Defendants provide a proposed protective order.  On July 28, 2026, Defendants provided a draft protective order.  To avoid the risk of inconsistent obligations and confusion about confidentiality protections across related matters, the parties are endeavoring to coordinate with all parties in all related actions on a consistent protective

- 8 -

JOINT CASE MANAGEMENT STATEMENT

order for this action. Defendants anticipate coordinating with lead counsel in all actions to finalize this document soon.

On July 24, 2026, there was an initial case management conference in the Related JCCP. During that conference, Defendants raised with Judge Schulman the overlapping discovery across this action and the Related JCCP. Judge Schulman noted that coordinated discovery "certainly makes all the sense in the world given that *Lyons* . . . is directly related to the *First County Bank* case, so it's not as if it's an entirely independent case. And it will require, presumably, coordinated discovery." JCCP Hr'g Tr. 24:14-18 (July 24, 2026) (attached as Exhibit A). Judge Schulman also expressed that his preference is that a "coordination order be entered into" to coordinate discovery between the two actions. *Id.* at 24:14.

Defendants will propose a coordination order to Plaintiff in this action and Plaintiffs in the Related JCCP to ensure that discovery is efficient and non-duplicative across the cases.

**9.      Class Actions: N/A**

**10.      Related Cases:**

Plaintiff's position:

Central to this case is the incident in which Mr. Soelberg killed his mother, Suzanne Adams, and committed suicide. Ms. Adams' estate has also filed suit against the same defendants as those here, with some additions. *First Country Bank v. OpenAI Foundation, et.al.*, No. CGC-25-631477 (Cal. Super. Dec. 11, 2025).

Defendants' position:

As Defendants discussed more fully in their response to Plaintiff's Civil L.R. 3-13 notice filed on April 30, 2026 (Dkt. 46, "Defendants' L.R. 3-13 Response"), this federal lawsuit is inextricably linked to *First County Bank* (or "*Adams*"), the substantially similar and earlier-filed lawsuit in California state court, asserting the very same seven causes of action on behalf of the same real parties in interest and based upon the same core factual allegations. Notably, Plaintiff agrees that this action and *Adams* are "nearly identical." Dkt. 43, 1.

*Adams* is one of approximately two dozen California state court actions asserting virtually identical claims and allegations about OpenAI's design of GPT-4o (the "Related Actions"). Each

- 9 -

JOINT CASE MANAGEMENT STATEMENT

of the Related Actions alleges that the design of GPT-4o caused the plaintiffs or their family members mental health injuries, and in some cases, death. And like this action, each complaint in the Related Actions asserts claims for strict product liability (design defect), strict product liability (failure to warn), negligence (design defect), negligence (failure to warn), and UCL violation. Some of the Related Actions, like this action, assert wrongful death and survival claims. *Adams* and approximately 20 other Related Actions have been coordinated or have sought coordination into the Related JCCP, where an initial case management conference was held on July 24, 2026. Entering a discovery coordination order in this case will ensure that the parties do not engage in wasteful, duplicative, or inefficient discovery as this action and the Related JCCP proceed in parallel.

**11.    Relief:**

Plaintiff's position:

Plaintiff seeks to recover for all survival damages recoverable as successors-in-interest, including Mr. Soelberg's pre-death economic losses and pre-death pain and suffering, in amounts to be determined at trial. Plaintiff also seeks to recover for all damages recoverable for wrongful death under California Code of Civil Procedure sections 377.6 and 377.61, including non-economic damages for the loss of Mr. Soelberg's love, companionship, comfort, care, assistance, protection, affection, society, and moral support, and economic damages including funeral and burial expenses, the value of household services, and the financial support Mr. Soelberg would have provided.

Additionally, Plaintiff seeks to recover for restitution of monies paid by or on behalf of Mr. Soelberg for his ChatGPT Plus subscription and for injunctive relief requiring Defendants (a) implement safeguards to prevent ChatGPT from validating users' paranoid delusions about identified individuals; (b) require automatic conversation termination or escalation when users express delusional beliefs about identified third parties; (c) restore programming requiring ChatGPT to challenge or reject users' false premises; (d) display clear, prominent warnings disclosing the risk that ChatGPT may validate false beliefs, including delusional beliefs about family members; (e) disclose to users and their families that ChatGPT's safety features degrade during multi-turn conversations; (f) implement safeguards to recognize patterns consistent with

paranoid psychosis and respond appropriately; (g) cease marketing ChatGPT without appropriate safety disclosures regarding risks to users experiencing mental health crises and the people around them; (h) delete models, training data, and derivatives built from conversations obtained without appropriate safeguards; (i) implement auditable data-provenance controls going forward; and (j) submit to quarterly compliance audits by an independent monitor.

Finally, Plaintiff seeks to recover for prejudgment interest, costs, expenses, and attorneys' fees as permitted by law.

Defendants' position:

Defendants deny liability for the allegations in the complaint. *See* Dkt. 44. Defendants state that Plaintiff has no basis on which to claim damages or on which to recover the other relief that she seeks, including injunctive relief. *Id.* at 20.

**12.    Settlement and ADR:**

The parties will comply with all local requirements. As indicated in the ADR Certifications that the parties filed on March 10, 2026 (Dkts. 24, 25), the parties prefer to discuss ADR selection at a case management conference.

**13.    Other References:**

The parties believe this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

**14.    Narrowing of Issues:**

Plaintiff's position:

The parties will work to narrow issues by agreement and/or motion after discovery has progressed. The parties will also seek to stipulate to facts not reasonably in dispute. At a later time, as discovery progresses, the parties will meet and confer to discuss limiting the number of asserted claims and defenses.

Defendants' position:

Defendants agree the parties will work to narrow issues by agreement and/or motion in due course.

JOINT CASE MANAGEMENT STATEMENT

**15.    Scheduling:**

Plaintiff's position:

Plaintiff proposes the following schedule:

| EVENT | DEADLINE |
| --- | --- |
| Initial Disclosures | 5/7/2026 |
| Fact Discovery | 5/3/2027 |
| Plaintiff's Expert Disclosure | 7/13/2027 |
| Defendants' Expert Disclosure | 8/9/2027 |
| Parties' Rebuttal Expert Disclosure | 9/6/2027 |
| Expert depositions (one deposition/expert) | 11/5/2027 |
| *Daubert* motions | 12/6/2027 |
| Summary Judgment Motions | 12/20/2027 |
| Trial Date | 1/24/2028 |

Plaintiff is opposed to Defendants' plan, outlined below, which would require Plaintiff to coordinate custodians and search terms with the various plaintiffs in the cases in state court.

Defendants' position:

Defendants respectfully propose the following schedule, which will (1) ensure sufficient time for the litigation of the novel and complex issues this case presents, and (2) allow for coordinated discovery in this action and the Related JCCP, without unduly delaying this case.

| EVENT | DEADLINE |
| --- | --- |
| Substantial completion of document productions, with the parties prioritizing discovery to maximize coordination with the Related JCCP | November 19, 2027 |
| Fact Depositions | November 22, 2027-May 26, 2028 |
| Amended pleadings | February 25, 2028 (or 90 days before fact discovery cutoff) |
| Fact discovery cutoff | May 26, 2028 |
| Plaintiffs' opening expert reports | June 23, 2028 |
| Defendants' opening expert reports | July 28, 2028 |
| Plaintiffs' rebuttal expert reports | August 25, 2028 |
| Defendants' rebuttal expert reports | September 29, 2028 |
| Expert depositions (one deposition/expert) | October 2, 2028-December 22, 2028 |
| *Daubert* motions and summary judgment motions | March 30, 2029 |
| Trial | TBD |

JOINT CASE MANAGEMENT STATEMENT

Defendants' proposed schedule differs from Plaintiff's proposed schedule in several key respects.

First, to avoid unnecessary duplication and wasted time, Defendants' proposed schedule directs the parties to prioritize discovery that is unique to this case and does not require coordination with other matters in the Related JCCP. Discovery in the Related JCCP will soon be underway once lead counsel is appointed, and the parties can then coordinate regarding discovery that is common to all actions. Judge Schulman is likely to appoint lead Plaintiffs' counsel in the Related JCCP on or shortly after July 31, 2026.[2] As discussed during the May 14, 2026 CMC, there is good reason to coordinate discovery in this case with discovery in the Related JCCP. The only way to allow for that coordination is to strategically prioritize discovery in this matter until discovery opens in the Related JCCP to avoid unnecessary duplication and inefficiency. To be clear, Defendants are not suggesting that discovery in this case should be "stayed" until discovery opens in the Related JCCP. Instead, the parties can and should prioritize discovery to include Soelberg-specific discovery and non-custodial discovery that will be produced in both actions. The parties should, however, conduct the negotiation of search terms and custodians for large-scale document productions in coordination with lead counsel in the Related JCCP to ensure that the scope of any document collection is comprehensive and avoid the risk of inconsistent search obligations and piecemeal collections.

Second, Defendants' proposed schedule has a phase for substantial completion of document discovery that will be followed by depositions. That proposal also enables coordination of discovery between this action and the Related JCCP. If depositions commence immediately in this action, it will inevitably lead to needlessly duplicative depositions (i.e., depositions in this action that have to later be repeated in the Related JCCP, after discovery opens in the Related JCCP). At

---

[2] Plaintiffs' counsel in the Related JCCP filed two competing motions for appointment. During the July 24, 2026 case management conference in the Related JCCP, Judge Schulman took the motions under advisement, and requested that Plaintiffs' counsel make a further filing regarding lead counsel appointments on July 31, 2026. Appointment of lead Plaintiffs' counsel in the Related JCCP will greatly ease the ability to negotiate discovery protocols and parameters in a coordinated manner.

the very least, depositions in this action should not commence until discovery opens in the Related JCCP so that witnesses can sit for a single, coordinated deposition.

Third, Defendants' proposed fact discovery cutoff is approximately one year after Plaintiffs' proposed discovery cutoff. Discovery in these matters will involve complex and novel issues, and Defendants' proposed fact discovery cutoff is a more realistic timeframe to accomplish that discovery. In addition to inevitably needing additional time to serve and respond to written discovery requests, negotiate search terms, resolve any disputes, conduct large-scale document review and production, and prepare for and conduct depositions, Defendants' proposed timeframe for discovery will facilitate efficient discovery coordination. To maximize the benefits of coordination, the parties in both actions will need to jointly negotiate—to the extent possible— custodians and search terms for document productions. The parties will also need to jointly negotiate the scheduling and taking of depositions. While that coordination will necessarily take some time, it will achieve significant efficiencies.

Fourth, Defendants propose that the Court hold a CMC to set pre-trial deadlines and a realistic trial date once it has ruled on the parties' *Daubert* and dispositive motions, and once the full scope of issues for any trial is understood.

Defendants' proposed schedule otherwise generally tracks Plaintiffs' proposed schedule in terms of the intervals between the close of fact discovery and the various rounds of expert disclosures (although Defendants' proposed schedule suggests non-simultaneous deadlines for rebuttal expert reports—mirroring Plaintiffs' proposal for non-simultaneous opening expert reports).

In sum, Defendants' proposed schedule provides realistic timeframes for a case of this complexity and allows for the benefits of the discovery coordination.

**16.    Trial:**

Plaintiff's position:

Plaintiff demands a jury trial. Plaintiff believes that the length of trial will depend on which, and to what extent, issues are resolved during the course of litigation, but anticipate a 7-day trial.

JOINT CASE MANAGEMENT STATEMENT

Defendants' position:

Defendants do not demand a jury trial. Defendants also do not presently have a position on whether any trial here would be appropriately before a jury because, for example, Defendants do not know which (if any) of the claims would be tried. For the same reasons, Defendants do not presently have an estimate for the length of a trial.

**17.    Disclosure of Non-Party Interested Entities or Persons:**

On March 3, 2026, Plaintiff filed its Certificate of Interested Entities. (Dkt. 19). Defendants filed a Certificate of Interested Entities, Citizenship, and Corporate Disclosure Statement on March 10, 2026. Dkt. 23. Defendant OpenAI OpCo, LLC filed a supplemental Certification of Conflicts, Interested Entities or Persons, and Citizenship on May 29, 2026. Dkt. 52. The parties will supplement those certifications as necessary.

**18.    Professional Conduct:**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED: July 30, 2026                    Respectfully submitted,

                                        **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                        By *s/ Ani Zotti*
                                            Elizabeth "Ani" Lubben Zotti (*pro hac vice*)
                                        Shana E. Scarlett (SBN 217895)
                                        715 Hearst Avenue, Suite 300
                                        Berkeley, CA 94710
                                        Telephone: (510) 725-3000
                                        Email: shanas@hbsslaw.com
                                            ani.zotti@hbsslaw.com

                                        Jacob Berman (SBN 327179)
                                        **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                        1301 Second Avenue, Suite 2000
                                        Seattle, WA  98101
                                        Telephone: (206) 623-7292
                                        Facsimile:  (206) 623-0594
                                        Email: jakeb@hbsslaw.com

                                        *Attorneys for Plaintiff*

By:  /s/ *Edward D. Johnson*
EDWARD D. JOHNSON (SBN 189475)
ANTHONY J WEIBELL (SBN 238850)
KRISTIN W. SILVERMAN (SBN 341952)
ELSPETH V. HANSEN (SBN 292193)
WJohnson@mayerbrown.com
AWeibell@mayerbrown.com
KSilverman@mayerbrown.com
EHansen@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306
Tel.:  (650) 331-2000
Fax:  (650) 331-2060

ANKUR MANDHANIA (SBN 302373)
CHRISTOPHER RHEINHEIMER (SBN 253890)
AMandhania@mayerbrown.com
CRheinheimer@mayerbrown.com
MAYER BROWN LLP
101 Second Street, 17th Floor
San Francisco, CA  94105
Tel.:  (415) 874-4230
Fax:  (415) 331-2060

ANDREW J. PINCUS (*pro hac vice*)
APincus@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
Tel.:    (202) 263-3000
Fax:    (202) 263-3300

GRAHAM WHITE (*pro hac vice*)
GWhite@mayerbrown.com
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York  10020
Tel.:    (212) 506-2500
Fax:    (212) 262-1910

MALORI MCGILL FERY (*pro hac vice*)
MMcGillFery@mayerbrown.com
MAYER BROWN LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84101
Tel.:   (801) 907-2700

- 16 -

JOINT CASE MANAGEMENT STATEMENT

Fax:   (801) 880-2221

*Attorneys for Defendants*
OPENAI FOUNDATION, OPENAI OPCO, LLC,
OPENAI HOLDINGS, LLC, OPENAI GROUP
PBC, and SAMUEL ALTMAN

- 17 -

## **ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing Stipulation.  Pursuant to Civil Local Rule 5-1, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized such filing.

Dated: July 30, 2026

*/s/ Ani Zotti*
Elizabeth "Ani" Lubben Zotti